**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL DOCKET NO. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF**
**NEY SILVERMAN INSURANCE ASSOCIATES, LLC FOR THE TRANSFER OF**
**RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK**
**FOR COORDINATED OR CONSOLIDATED PRETRIAL**
**PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Ney Silverman Insurance Associates, LLC ("Plaintiff") in the action captioned

*Ney Silverman Insurance Associates, LLC v. Keurig Green Mountain, Inc., et al.*, Case No. 14-

cv-01671 (S.D.N.Y. Mar. 11, 2014) (the "Ney Silverman Action"), respectfully submits this

Memorandum of Law in support of its motion pursuant to 28 U.S.C. § 1407 to transfer and

coordinate or consolidate related actions to the Southern District of New York.

**BACKGROUND**

To date, six related class actions have been filed in three judicial districts in the United

States alleging Keurig Green Mountain, Inc., Green Mountain Coffee Roasters, Inc. and Keurig,

Incorporated[1] (together, "Green Mountain" or "Defendants") have unlawfully monopolized the

United States market for single-serve coffee.  Plaintiff in the Ney Silverman Action is aware of

---

[1] Certain of the actions name only Green Mountain Coffee Roasters, Inc. and Keurig, Incorporated as defendants.  On March 10, 2014, Green Mountain Coffee Roasters, Inc. changed its name to Keurig Green Mountain, Inc.  Keurig Green Mountain, Inc. is also successor to Keurig, Incorporated.  *See* Notice of Appearance, *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Mar. 10, 2014), ECF No. 14.

the following five other related class actions:  *Hoyer v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-01609 (S.D.N.Y. Mar. 10, 2014); *Rocker v. Green Mountain Keurig, Inc., et al.*, Case No. 14-cv-01716 (S.D.N.Y. Mar. 12, 2014); *Constantino v. Keurig Green Mountain, Inc., et al.*, Case No. 14-cv-01836 (S.D.N.Y. Mar. 17, 2014); *Major v. Keurig Green Mountain, Inc., et al.*, Case No. 11:14-cv-00348-UNA (D. Del. Mar. 19, 2014); and *Rizzo v. Keurig Green Mountain, Inc., et al.*, Case No. 1:14-cv-11030 (D. Mass. Mar. 19, 2014) (together, with the Ney Silverman Action, the "Class Actions").[2]  Additionally, two competitor actions asserting the same allegations have been filed against Green Mountain: *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Feb. 11, 2014) and *JBR, Inc. vs. Keurig Green Mountain, Inc., et al.*, Case No. 2:14-cv-00677-KJM-CKD (E.D. Cal. Mar. 13, 2014) (the "Competitor Actions") (together, with the Class Actions, the "Related Actions").  Of the five Related Actions filed in the Southern District of New York, four are currently before Judge Vernon S. Broderick.[3]

Transfer and coordination or consolidation of the Related Actions in the Southern District of New York is appropriate because they involve common questions of fact and the same Defendant, Green Mountain.  Plaintiff believes that transfer of the Competitor Actions to a single district for coordination, not consolidation, of pretrial proceedings with the Class Actions is most appropriate.  The Related Actions arise out of the same factual events and allege identical conduct by Green Mountain.  Green Mountain manufactures k-cups ("K-Cups"), which are single servings or "portion packs" of coffee or other beverages ("Portion Packs") that are used in

---

[2] Pursuant to Rule 6.1(b)(ii) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, attached hereto is a Schedule of Actions.

[3] The fifth, only filed three days ago, has not yet been assigned to a judge.  However, it was filed as related to the Competitor Action currently before Judge Broderick, and is thus also likely to be transferred to Judge Broderick.

a specific type of single-serve brewer ("Single-Serve Brewer"), the K-Cup Single-Serve Brewer ("K-Cup Brewer").   The complaints in the Related Actions all allege that Green Mountain has unlawfully monopolized the market for Single-Serve Brewers and the market for cups compatible with K-Cup Brewers ("Compatible Cups")[4] through a multifaceted anticompetitive scheme in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[5]

Transfer of the Related Actions to one forum is essential so that they may be centralized for pretrial proceedings.  This is necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judges in the four separate federal judicial districts in which the Related Actions have been filed. Thus, transfer and coordination or consolidation will further the convenience of the parties and witnesses, and promote efficiency and judicial economy.

The most appropriate forum for transfer and coordination or consolidation is the Southern District of New York because:

1.      The Southern District of New York is the venue where the first-filed Related Action, and the vast majority of the Related Actions are pending;

2.      The Southern District of New York is convenient and accessible for all parties and potential witnesses in the Related Actions;

3.      The Southern District of New York has considerable expertise in dealing with issues presented by complex, multidistrict litigation, especially antitrust litigation, and all the resources needed to provide for the prompt and efficient management of the Related Actions; and

---

[4] Compatible Cups include both K-Cups and other cups designed by Green Mountain's competitors for use in K-Cup Brewers.

[5] Certain of the Related Actions also assert antitrust claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, and/or violations of state laws and the common law of unjust enrichment.

4.     Judge Broderick does not presently have a multidistrict litigation on his docket[6] and thus has the time and resources necessary to efficiently preside over the Related Actions.

Accordingly, all Related Actions should be transferred and coordinated or consolidated in the Southern District of New York pursuant to 28 U.S.C. § 1407 for pretrial proceedings.

## ARGUMENT

## I.     Transfer And Coordination Or Consolidation Of The Related Actions Is Appropriate

Under 28 U.S.C. § 1407(a), civil actions pending in different district courts and involving "one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings."  Transfer is appropriate to serve "the convenience of the parties and witnesses" and to "promote the just and efficient conduct" of the pending actions.  *Id.*  Here, these factors strongly militate in favor of transferring all Related Actions to the Southern District of New York for coordinated or consolidated pretrial proceedings.

### A.     The Related Actions Involve Common Questions Of Fact

The Related Actions share many common questions of fact which provide a sufficient basis for coordinating or consolidating the actions in a single forum.  Common questions of fact exist where two or more complaints assert comparable allegations against similar defendants based on similar transactions and events.  *See, e.g., In re UnumProvident Corp. Secs., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (centralization appropriate where "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and "core factual allegations" were consistent among the actions); *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) ("Transfer under

---

[6] *See* MDL Statistics Report – Distribution of Pending MDL dockets, http://www.jpml.uscourts.gov/pending-mdls-0.

Section 1407 is not dependent on a strict identity of issues and parties but rather on the existence of one or more common questions of fact.").

The individual complaints in the Related Actions involve questions of fact that are not merely common, but virtually identical.  In the Related Actions, the complaints focus on the same alleged anticompetitive conduct by Green Mountain:  unlawful monopolization through a multifaceted scheme of anticompetitive acquisitions, sham litigation, exclusive dealing arrangements and lock-out technology designed to prevent Green Mountain competitors' Compatible Cups from working with the next generation of K-Cup Brewers.  Common questions of fact (and law) at issue in the Related Actions include, *inter alia*:

(a)     Whether the United States market for Single-Serve Brewers constitutes a Relevant Market;

(b)     Whether the United States market for Portion Packs constitutes a Relevant Market;[7]

(c)     Whether the United States market for Compatible Cups constitutes a Relevant Market;

(d)     Whether Green Mountain possesses monopoly power in these three Relevant Markets;

(e)     Whether, through the unlawful conduct alleged herein, Green Mountain willfully acquired, maintained, or enhanced its monopoly power in the three Relevant Markets;

(f)     Whether Green Mountain monopolized the three Relevant Markets by engaging in unlawful exclusionary conduct to acquire, maintain, or enhance its monopoly power in the three Relevant Markets;

---

[7] Portion Packs are single servings of coffee or other beverages used in Single-Serve Brewers. All but two of the Related Actions allege that the Portion Pack market is a Relevant Market.

(g)     Whether, and to what extent, Green Mountain's conduct caused injury to the business or property of plaintiffs and the members of the class in the Related Actions;

(h)     The effect of the alleged monopolization on the prices of K-Cups sold in the United States;

(i)     The appropriate injunctive and related equitable relief; and

(j)     The appropriate measure of damages sustained by the plaintiffs and other members of the class in the Related Actions.

These substantially overlapping factual allegations and legal issues are sufficient to merit transfer and coordination or consolidation.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (holding that transfer under § 1407 was appropriate where "common defendant Intel Corp. monopolized and unlawfully maintained a monopoly in the market for [] microprocessing chips"); *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (holding that transfer under § 1407 was appropriate where related actions alleged Del Monte monopolized the market for extra-sweet pineapples by fraudulently enforcing a patent); *see also In re Prograf Antitrust Litig.*, 789 F. Supp. 2d 1380, 1380 (J.P.M.L. 2011) ("[W]e find that these three actions involve common questions of fact, and that centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

## B.     Transfer Will Promote The Just And Efficient Conduct Of The Related Actions

In light of the common factual allegations asserted and identical legal theories pursued by plaintiffs in the Related Actions, transfer and coordination or consolidation will serve the "convenience of parties and witnesses and will promote the just and efficient conduct" of the litigation.  28 U.S.C. § 1407(a).

Coordinating or consolidating the Related Actions for pretrial proceedings will eliminate duplicative discovery because plaintiffs in the Related Actions will seek to develop similar evidence, including evidence of Green Mountain's alleged unlawful monopolization through a scheme of anticompetitive acquisitions, sham litigation, exclusive dealing arrangements and technology designed to lock competitors out of the Compatible Cup market. *See In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) ("These actions share factual questions relating to alleged anticompetitive conduct in the market for fresh and process potatoes. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (same).

Moreover, plaintiffs in the Class Actions will also have to satisfy the class action prerequisites of Rule 23 of the Federal Rules of Civil Procedure, further supporting transfer and coordination or consolidation of all of the Related Actions in one district court. *See In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008) (transferring actions where all actions shared factual questions, citing the need to prevent inconsistent rulings, especially on class certification).  This consideration weighs heavily in favor of transfer and coordination or consolidation. *See In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (holding transfer necessary "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve

the resources of the parties, their counsel and the judiciary").  The Panel has "consistently held that the existence of and the need to eliminate [the possibility of inconsistent class certification rulings] presents a highly persuasive reason favoring transfer under Section 1407."  *In re Roadway Express, Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974); *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (explaining that § 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations").

Thus, where, as here, transfer to a single court will avoid duplicative discovery and potentially conflicting pretrial and class certification rulings, transfer for pretrial purposes is warranted to promote the interest of judicial economy and efficiency.

## II.     The Southern District Of New York Is The Most Appropriate Forum

The Southern District of New York is the most appropriate forum for the Related Actions for very sound reasons:  1) the first-filed and overwhelming majority of the Related Actions are pending in the Southern District of New York; 2) the Southern District of New York is geographically convenient to the parties; 3) the Southern District of New York is well-equipped to preside over the Related Actions; and 4) Judge Broderick has the time and resources necessary to devote to the efficient management of the Related Actions.

### A.     The First-Filed And Majority Of The Related Actions Are Pending In The Southern District Of New York

The Panel has expressed a preference for transfer to the forum in which the first-filed action is pending, and for transfer to the forum in which the greatest number of cases are pending.  *See, e.g., In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (noting "[a]s we have previously held, it is appropriate to give 'the first-filed criterion some weight in selecting a transferee district'") (citation omitted); *In re*

*Mattel Inc. Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) (transferring actions to the Central District of California in part because the first-filed of related actions was pending in that district);[8] *In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006) (transferring actions to the Northern District of Illinois where the majority of related actions had been filed); *In re OxyContin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1398 n.1 (J.P.M.L. 2004) (transferring actions to the Southern District of New York where twenty-three out of forty-one actions were already pending in that district).[9]  Both of these factors favor transfer to the Southern District of New York.[10]

Other factors to be considered include the existence and progress of any related pending litigation, including whether any judge has become particularly familiar with the claims at issue. Here, while the Related Actions have all been filed within a short period of time, the Southern District of New York has already acted to avoid duplication of efforts and increase efficiencies by relating and transferring to a single judge the first four of the Related Actions filed in the District.  Judge Broderick has already scheduled a Pre-Motion Conference in the Competitor

---

[8] *See also In re iPhone/iPad Application Consumer Privacy Litig.*, MDL. No. 2250, 2011 U.S. Dist. LEXIS 95969, at *3 (J.P.M.L. Aug. 25, 2011) (transferring all actions to first-filed jurisdiction); *In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (same); *In re Prograf Antitrust Litig.*, MDL No. 2242, 2011 U.S. Dist. LEXIS 59448, at *2-*3 (J.P.M.L. June 3, 2011) (same); *In re AutoZone, Inc., Wage & Hour Empl. Practices Litig.*, 717 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010) (same).

[9] *See also In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (transferring to the Southern District of Texas where forty out of fifty-four actions were already pending there, based in part because "most of the actions have been brought in the Southern District of Texas").

[10] *See In re Zoloft (Sertranline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) (finding most appropriate district in which "[m]ore than half of the related actions are pending [], including the first-filed action."); *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351, 1353 (J.P.M.L. 2004) (holding transferee district "is where the first-filed and largest number of actions are pending").

Action pending before him.[11]  Furthermore, in the letters requesting and responding to the request for a Pre-Motion Conference, the parties have already submitted detailed arguments in support of their respective positions on Green Mountain's proposed motion to dismiss.[12]  The Panel has, in the past, found an appropriate transferee district where the judge was already familiar with the issues in the litigation.  *See, e.g., In re Michelin N. Am., Inc.*, 536 F. Supp. 2d 1365, 1366 (J.P.M.L. 2008) (transferring to district in which judge had already had an opportunity to familiarize himself with issues in the litigation).

B.     **The Southern District Of New York Is Geographically Convenient To The Parties And Witnesses In The Related Actions**

Convenience of the parties and counsel is another important factor considered by the Panel in selecting a transferee forum.  Virtually all of the parties in the Related Actions are represented by counsel who have offices in the Southern District of New York.  For those parties and counsel who will need to travel, the Panel has previously noted that the Southern District of New York "is relatively conveniently located for parties and witnesses and their counsel." *In re Parmalat Secs. Litig.*, 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004); *see also In re Rhodia S.A. Sec. Litig.*, 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005) (finding the Southern District of New York "provides an accessible, metropolitan location"); *In re Fed. Home Loan Mortg. Corp. Secs.*

_____

[11] *See* Memo Endorsement, *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Mar. 11, 2014) (granting application to hold pre-motion conference on March 20, 2014), ECF No. 22; *see also* Order, *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Mar. 17, 2014), ECF No. 27 (adjourning pre-motion conference to May 1, 2014).

[12] *See* Letter addressed to Judge Vernon S. Broderick from Lev Dassin dated March 10, 2014 re: Requesting a pre-motion conference, etc., *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Mar. 10, 2014), ECF No. 16; Letter addressed to Judge Vernon S. Broderick from Dan K. Webb dated 3/13/2014 re: Plaintiffs' response to pre-motion letter, *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-00905 (S.D.N.Y. Mar. 13, 2014), ECF No. 24.

*& Derivative Litig.*, 303 F. Supp. 2d 1379 (J.P.M.L. 2004) (finding the Southern District of New York "is readily accessible for parties and witnesses").

Manhattan is easily accessible to travelers via three major international airports (John F. Kennedy International Airport, LaGuardia International Airport and Newark Liberty International Airport), allowing parties and witnesses to travel to and from the District with ease. In addition, the Southern District of New York is well-served by convenient regional transit, trains and roads. Accordingly, the Southern District of New York would provide an appropriate venue for pretrial proceedings.

Moreover, the convenience of the parties and counsel is best served by choosing a central location in a city which is large enough to provide all necessary litigation support services and amenities. Indeed, the Panel has previously noted, in finding the Southern District of New York an appropriate transferee forum, that "litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services." *In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002); *see also In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 203 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2002) ("the Southern District of New York courthouse in Manhattan provides a convenient and accessible forum for participants in the coordinated or consolidated pretrial proceedings").

## C.     The Southern District Of New York Has The Necessary Expertise And Resources To Provide Prompt And Efficient Management Of This Litigation

The Southern District of New York has extensive experience in managing consolidated multidistrict litigation, including those containing complex antitrust claims. The Panel has transferred numerous multidistrict antitrust litigations to the Southern District of New York, including the following: *In re Aluminum Warehousing Antitrust Litigation* (MDL No. 2481); *In*

*re Electronic Books Antitrust Litigation* (MDL No. 2293); *In re Libor-Based Financial Instruments Antitrust Litigation*, (MDL No. 2262); *In re Time-Warner Inc. Set-Top Cable Television Box Antitrust Litigation* (MDL No. 1995); *In re Municipal Derivatives Antitrust Litigation* (MDL No. 1950); *In re OxyContin Antitrust Litigation* (MDL No. 1603); and *In re Currency Conversion Fee Antitrust Litigation* (MDL No. 1409).

The Panel has recognized that the Southern District of New York "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters" that complex dockets require. *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d. 1351, 1353 (J.P.M.L. 2004); *see also In re Merrill Lynch & Co.*, 223 F. Supp. 2d 1388, 1390 (J.P.M.L. 2002) (same); *In re AOL Time Warner Secs. Litig.*, 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (same). Indeed, the Southern District of New York has one of the most active multidistrict litigation dockets in the country. Counting proceedings terminated through September 30, 2013, no district has successfully adjudicated more multidistrict litigations than the Southern District of New York.[13] As of March 13, 2014, 41 multidistrict litigations were pending in the Southern District of New York – more than any other district – including nine antitrust actions.[14] With 50 sitting district judges and 15 sitting magistrate judges, the Southern District of New York easily has the capacity to manage this volume of complex litigation.

Furthermore, the Related Actions filed in the Southern District of New York have been designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the "Pilot Project"). The Southern

---

[13] *See* JPML Statistical Information – Cumulated Terminated through Calendar Year 2013, http://www.jpml.uscourts.gov/statistics-info (the Southern District of New York has concluded 135 MDLs).

[14] *See* MDL Statistics Report – Distribution of Pending MDL dockets, http://www.jpml.uscourts.gov/pending-mdls-0.

District of New York launched the Pilot Project in 2011 to improve the quality of judicial case management of complex cases.[15]  The Pilot Project, aimed at streamlining complex civil litigation, implements a variety of procedures recommended by the Judicial Conference Advisory Committee on Civil Rules for the management of complex civil cases.[16]  As such, the Southern District of New York, through the Pilot Project, is particularly well-suited to swiftly and efficiently adjudicate the Related Actions.

### D.      Judge Broderick Has The Time And Resources Necessary To Efficiently Preside Over The Related Actions

The Panel has often recognized the desirability of transferring multidistrict litigation to a judge who "is not currently assigned to another such docket," and thus will be well-equipped to manage the litigation. *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009); *see also In re: Suboxone (Buprenorphine Hydrochloride And Naloxone) Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (assigning to judge who has not yet presided over a multidistrict litigation); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013) (assigning to a district judge with no multidistrict litigation).  Judge Broderick currently has no multidistrict litigations pending before him, nor is he presently burdened with an overly heavy docket.  Thus, Judge Broderick will be able to devote the necessary time and resources to effectively manage the Related Actions.

---

[15] *See* Preface to Report of the Judicial Improvements Committee Pilot Project Regarding Case Management Techniques for Complex Civil Cases, attached to Standing Order, *In re Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York*, Case No. 11-misc-00388 (S.D.N.Y. Oct. 31, 2011).

[16] *See id.*

<u>**CONCLUSION**</u>

Accordingly, Plaintiff Ney Silverman Insurance Associates, LLC respectfully requests that the Panel grant its motion and transfer all Related Actions to the Southern District of New York for coordinated or consolidated pretrial proceedings.

Dated: March 20, 2014

Respectfully submitted,

*/s/ Kellie Lerner*
Kellie Lerner
Hollis Salzman
Bernard Persky
**ROBINS, KAPLAN, MILLER
& CIRESI L.L.P.**
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
klerner@rkmc.com
hsalzman@rkmc.com
bpersky@rkmc.com

K. Craig Wildfang
Thomas J. Undlin
Stephen P. Safranski
**ROBINS, KAPLAN, MILLER
& CIRESI L.L.P.**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
kcwildfang@rkmc.com
tjundlin@rkmc.com
spsafranski@rkmc.com

John Zaremba
**ZAREMBA BROWNELL & BROWN
PLLC**
The Trump Building

14

40 Wall Street 27th Floor
New York, NY 10005
Telephone:  (212) 380-6700
jzaremba@zbblaw.com

*Counsel for Plaintiff Ney Silverman*
*Insurance Associates, LLC and the*
*Proposed Direct Purchaser Class*