**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| IN RE KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL DOCKET NO. 2542 |

**FIRST-FILED PLAINTIFFS TREEHOUSE, INC., BAY VALLEY FOODS, LLC, AND
STURM FOODS, INC.'S RESPONSE TO CLASS PLAINTIFF'S MOTION FOR THE
TRANSFER OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW
YORK FOR COORDINATED OR CONSOLIDATED PRE-TRIAL PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

BACKGROUND ..................................................................................................................1

ARGUMENT ....................................................................................................................3

I.      TreeHouse Agrees That Consolidation of the Individual, Competitor
        Actions with the Class Actions Is Inappropriate..................................................3

        A.      Consolidation or Transfer of the *TreeHouse Litigation* Would Be
                Unjust and Inefficient Because Class Action Procedures and
                Discovery Do Not Apply to the Individual, Competitor Actions ...........4

        B.      Consolidation or Transfer of the *TreeHouse Litigation* Would Be
                Unjust and Inefficient Because the Claims, Factual Issues, and
                Nature of Relief Sought By TreeHouse Are Substantially Different .....7

        C.      Transfer and Consolidation Are the Last Resort.................................8

II.     Voluntary Coordination of the Competitor Actions with the Class Actions
        Is an Existing, Feasible, and Efficient Alternative to Consolidation...................9

III.    The Most Appropriate Forum Is the Southern District of New York Before
        Judge Broderick .............................................................................................12

        A.      The First-Filed Action, the *TreeHouse Litigation*, Was Filed in the
                Southern District of New York .......................................................12

        B.      The Majority of Actions Are Already Related and Pending in the
                Southern District of New York Before Judge Broderick......................13

        C.      Judge Broderick's Docket Will Allow Him to Adjudicate This
                Litigation in an Efficient Manner .....................................................14

        D.      The Cases in the Southern District of New York Have Progressed
                Farther Than in Any Other Court and Judge Broderick Already
                Has Substantial Experience with This Case..........................................15

        E.      Judge Broderick Has Substantial Expertise with Complex
                Commercial Litigation and Its Effective Management.........................16

        F.      The Southern District of New York Has Considerable Experience
                with Similar Cases and Is Well-Equipped to Handle a Complex
                MDL............................................................................................17

        G.      Manhattan Is the Most Accessible and Convenient Location...............18

H.    The Majority of Counsel Has an Office in the Southern District of New York ........................................................................................................ 18

CONCLUSION ........................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apana v. Fairmont Hotels & Resorts (U.S.), Inc.*,
　2009 WL 975779 (D. Hawaii Apr. 8, 2009) ............................................................5

*In re Aggrenox Antitrust Litig.*,
　MDL No. 2516, 2014 WL 1338421 (J.P.M.L. 2013) ............................................17

*In re Air Crash Near Athens, Greece on Aug. 14, 2005*,
　435 F. Supp. 2d 1340 (J.P.M.L. 2006) ..................................................................13

*In re AutoZone, Inc., Wage & Hour Empl. Practices Litig.*,
　717 F. Supp. 2d 1380 (J.P.M.L. 2010) ..................................................................13

*In re Bank of Am. Corp. Secs., Derivative & Emp't Ret. Income Sec. Act. (ERISA) Litig.*,
　2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ............................................................6

*In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*,
　746 F. Supp. 2d 1359 (J.P.M.L. 2010) ....................................................................7

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
　804 F. Supp. 2d 1376 (J.P.M.L. 2011) ....................................................................9

*In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*,
　763 F. Supp. 2d 1377 (J.P.M.L. 2011) ..................................................................11

*In re Brandywine Commc'ns Techs., LLC, Patent Litig.*,
　MDL No. 2462, 959 F. Supp. 2d 1377 (J.P.M.L. 2013) ..........................................5

*In re Commonwealth Scientific & Indus. Research Organisation Patent Litig.*,
　395 F. Supp. 2d 1357 (J.P.M.L. 2005) ....................................................................9

*In re Elevator & Escalator Antitrust Litig.*,
　350 F. Supp. 2d 1351 (J.P.M.L. 2004) ..................................................................14

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*,
　446 F. Supp. 242 (J.P.M.L. 1978) ....................................................................9, 10

*In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sale Practices Litig.*,
　885 F. Supp. 2d. 1383 (J.P.M.L. 2012) ................................................................13

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
　196 F. Supp. 2d 1375 (J.P.M.L. 2002) ..................................................................13

*In re Fed. Home Loan Mortg. Corp. Secs. & Derivative Litig.*,
    303 F. Supp. 2d 1379 (J.P.M.L. 2004)....................................................................18

*In re Hypodermic Prods. Antitrust Litig.*,
    408 F. Supp. 2d 1356 (J.P.M.L. 2005)....................................................................19

*In re iPhone/iPad Application Consumer Privacy Litig.*,
    MDL. No. 2250, ECF No. 51 (J.P.M.L. Aug. 8, 2011) ...........................................13

*In re Joseph P. Smith Patent Litig.*,
    407 F. Supp. 1403 (J.P.M.L. 1976)........................................................................13

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
    802 F. Supp. 2d 1367 (J.P.M.L. 2011)....................................................................18

*In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*,
    908 F. Supp. 2d. 1352 (J.P.M.L. 2012)...................................................................12

*In re Light Cigarettes Mktg. & Sales Practices*,
    652 F. Supp. 2d 1379 (J.P.M.L. 2009).............................................................4, 7, 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
    MDL No. 2502, ECF No. 103 (Feb. 18, 2014) .......................................................17

*In re Lloyds Bank PLC Int'l Mortg. Serv. Loan Litig.*,
    MDL No. 2501, ECF No. 27 (J.P.M.L. Feb. 14, 2014) ......................................5, 11

*In re Mattel Inc. Toy Lead Paint Prods. Liab. Litig.*,
    528 F. Supp. 2d 1367 (J.P.M.L. 2007)....................................................................13

*In re Maxim Integrated Prods., Inc. Patent Litig.*,
    867 F. Supp. 2d 1333 (J.P.M.L. 2012)....................................................................16

*In re Michaels Stores, Inc., Pin Pad Litig.*,
    2012 WL 432605 (J.P.M.L. 2012) ...........................................................................8

*In re Morrocanoil Trademark Litig.*,
    777 F. Supp. 2d 1340 (J.P.M.L. 2011)..................................................................6, 9

*In re Nat'l Credit Union Admin. Bd. Mortg.-Backed Secs. Litig.*,
    MDL No. 2505, ECF No. 44 (J.P.M.L. Feb. 12, 2014) .....................................10, 11

*In re Neurontin Mktg. & Sales Practices Litig.*,
    342 F. Supp. 2d 1350 (J.P.M.L. 2004)..............................................................16, 17

*In re NuvaRing Prods. Liab. Litig.*,
    572 F. Supp. 2d 1382 (J.P.M.L. 2008)....................................................................18

*In re Parmalat Secs. Litig.,*
  350 F. Supp. 2d 1356 (J.P.M.L. 2004)...................................................................18

*In re Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York,*
  Standing Order, ECF No. 1 (S.D.N.Y. Nov. 1, 2011) ......................................................2, 17

*In re Prograf Antitrust Litig.,*
  MDL No. 2242, 2011 U.S. Dist. LEXIS 59448 (J.P.M.L. June 3, 2011) ...............................13

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.,*
  763 F. Supp. 2d 1374 (J.P.M.L. 2011)...................................................................13

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
  MDL No. 1869, 725 F.3d 244 (D.C. Cir. 2013) ....................................................5

*In re Rhodia S.A. Sec. Litig.,*
  398 F. Supp. 2d 1359 (J.P.M.L. 2005)...................................................................18

*In re Rule 13 of the Rules for the Div. of Bus. Among Judges,*
  No. 1:13-mc-00432-P1, ECF No. 1 ....................................................................10

*In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.,*
  949 F. Supp. 2d 1364 (J.P.M.L. 2013)...................................................................9, 11

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,*
  949 F. Supp. 2d 1365 (J.P.M.L. 2013)...................................................................15

*In re Webloyalty.com, Inc., Mktg. & Sales Practices Litig.,*
  MDL No. 2206, 768 F. Supp. 2d 1365 (J.P.M.L. 2011).................................................9

*In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III),*
  804 F. Supp. 2d 1382 (J.P.M.L. 2011)...................................................................18

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.,*
  856 F. Supp. 2d 1347 (J.P.M.L. 2012)...................................................................14

*Malcolm v. Nat'l Gypsum Co.,*
  995 F.2d 346 (2d Cir. 1993)..............................................................................8

*Schueneman v. Arena Pharm., Inc.,*
  2011 WL 3475380 (S.D. Cal. Apr. 8, 2011)...................................................4, 6, 11

## STATUTES

28 U.S.C. § 1407............................................................................................ passim

Section 1 of the Sherman Act, 15 U.S.C. § 1..............................................................7

Section 2 of the Sherman Act, 15 U.S.C. § 2.................................................................................7

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................................................5, 6

Fed. R. Civ. P. 42(a) ...........................................................................................................................4

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 20 (2004) .........................................................5, 9, 10

5 Moore's Federal Practice § 23.85 [1] (Matthew Bender 3d ed. 2009) ........................................6

Plaintiffs TreeHouse, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively "TreeHouse") in the action *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc., et al.* ("*TreeHouse Litigation*"),[1] No. 14-cv-00905 (S.D.N.Y. Feb. 11, 2014), respectfully submit this response to the motion by class plaintiff Ney Silverman Insurance Associates, LLC ("Ney") to transfer and coordinate or consolidate related actions to the Southern District of New York pursuant to 28 U.S.C. § 1407.  *See* ECF No. 1-1 ("Ney Mem.") (Mar. 20, 2014). TreeHouse agrees with the moving class plaintiff that the two individual, competitor actions should not be consolidated with the numerous follow-on class actions that have been filed and agrees that the Southern District of New York is the most appropriate forum. *Cf.* Ney Mem. at 2. As for coordination of discovery, TreeHouse does not in principle oppose coordinating discovery with the class actions provided the *TreeHouse Litigation* continues to proceed without any delay which might be caused by selection of class counsel, class action complaint consolidation, class certification, or other issues unique to class actions.   TreeHouse would be significantly prejudiced by any such delay given, among other things, its request for injunctive relief in connection with the anticipated launch of the new Keurig 2.0 product in the Fall of 2014.

## BACKGROUND

TreeHouse competes with Defendant for the manufacture and sale of single-servings of coffee and other beverages contained in "portion packs," known as K-Cups or "cups," that are used in brewers sold by Defendant.  On February 11, 2014, TreeHouse filed the first of all related actions against Defendant and did so in the Southern District of New York.  As set forth in TreeHouse's detailed complaint ("Compl."), Defendant has committed numerous monopolistic and anticompetitive acts directed at TreeHouse that have harmed, continue to harm,

---

[1] Since TreeHouse filed its complaint, Green Mountain Coffee Roasters, Inc., changed its name to Keurig Green Mountain, Inc.  Keurig Green Mountain, Inc., Green Mountain Coffee Roasters, Inc., and Keurig Incorporated are referred to collectively herein as "Defendant."

and threaten additional impending harm to TreeHouse's business, competition, and the market as a whole.  *See, e.g.*, Compl. ¶¶ 287-307.  Defendant has unlawfully restrained competition, among other ways, by: (1) coercing companies at every level of the K-Cup distribution system to enter into anticompetitive and exclusionary agreements restraining TreeHouse's ability to compete on the merits; (2) seeking to block TreeHouse products from working in brewers scheduled for release this Fall 2014; (3)  filing sham litigation against TreeHouse; and (4) interfering with TreeHouse's business relations by confronting customers with Defendant's plan to exclude TreeHouse from the market.  *See, e.g.*, Compl. ¶ 28.

The *TreeHouse Litigation* has been designated for inclusion in the Pilot Program Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York ("Complex Case Program") and has been assigned to the Honorable Judge Vernon S. Broderick, who helped design the Complex Case Program.[2]  Last month, both parties submitted letter briefings to Judge Broderick concerning Defendant's proposed motion to dismiss arguments, and Judge Broderick set May 1, 2014 as the date for pre-motion arguments and the initial pretrial conference.[3]  Defendant moved to adjourn the conference after follow-on class actions were filed, but Judge Broderick instead ordered all related cases in that court to appear on May 1, 2014 to address coordination across all such actions.[4]  The vast majority of all related actions (ten out of fifteen) have been filed in the Southern District of New York and will have

---

[2] *See In re Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York*, Standing Order, ECF No. 1, at iii (S.D.N.Y. Nov. 11, 2011).
[3] *TreeHouse Litig.*, ECF No. 16 (Mar. 10, 2014); *id.*, ECF No. 24 (Mar. 13, 2014); *id.*, ECF No. 27 (Mar. 17, 2014).
[4] *Id.*, ECF No. 29 (Mar. 20, 2014); *id.*, ECF No. 30 (Mar. 21, 2014); *id.*, ECF No. 31 (Mar. 28, 2014).

already convened on May 1, 2014 to coordinate these actions before Judge Broderick prior to the

time this Panel hears argument on class plaintiff's motion here.[5]

    To date, only one other competitor has filed a similar action against Defendant.[6]   The

other thirteen related actions are all follow-on class actions (collectively "Class Actions,"

excluding the Competitor Actions).   Acknowledging the inherent distinctions between the two

Competitor Actions and the follow-on Class Actions, the class plaintiff movant does not seek to

consolidate the Competitor Actions with the Class Actions, but rather seeks only to coordinate

pretrial discovery with the two competitors.  Ney Mem. at 2.

## ARGUMENT

### I.    TreeHouse Agrees That Consolidation of the Individual, Competitor Actions with the Class Actions Is Inappropriate

    TreeHouse agrees with the moving class plaintiff that consolidation of the Competitor

Actions with the follow-on Class Actions would be inappropriate given the substantial

scheduling and procedural issues unique to class action litigations.   *See* Ney Mem. at 2

("Plaintiff believes that transfer of the Competitor Actions to a single district for coordination,

***not consolidation***, of pretrial proceedings with the Class Actions is most appropriate.")

(emphasis added).  When deciding whether a case should be transferred into MDL proceedings,

the Panel must consider whether the consolidation and transfer would be "just and efficient."  28

U.S.C. § 1407(a).  As demonstrated below, consolidation or transfer of the *TreeHouse Litigation*

to any court besides the Southern District of New York would be neither just nor efficient

---

[5] For the Panel's convenience, attached is a current list of all actions filed.  *See* Exhibit A, Complete List of Actions to Date ("Ex. A").  Exhibit A includes all actions on the initial Schedule A, ECF No. 1-2 (Mar. 20, 2014), in addition to all actions filed thereafter that have since been listed on notices of related actions.

[6] *JBR, Inc. v. Keurig Green Mountain, Inc., et al.*, No. 2:14-cv-00677-KJM-CKD (E.D. Cal. Mar. 13, 2013) ("*Rogers Litigation*") (collectively with the *TreeHouse Litigation* "Competitor Actions").

because it would permit Defendant to delay the first-filed litigation by TreeHouse, thereby subjecting TreeHouse to continuing violations of tort and antitrust law *as well as to new violations that Defendant has threatened to commit this fall*.  Indeed, Defendant has already sought to delay the *TreeHouse Litigation* by twice requesting to adjourn the initial pretrial conference and requesting to stay that action due to the motion pending here before the Panel.[7] This Panel should not permit Defendant to unjustly delay the first-filed and unique, individual Competitor Action.  *See infra* Arg. § I(B).  Although class purchaser plaintiffs may be made whole by monetary damages, delay in the *TreeHouse Litigation* would irreparably harm TreeHouse's business.

> **A.** **Consolidation or Transfer of the *TreeHouse Litigation* Would Be Unjust and Inefficient Because Class Action Procedures and Discovery Do Not Apply to the Individual, Competitor Actions**

Consolidation of the *TreeHouse Litigation* with the Class Actions would cause unjust delay and inefficiencies for TreeHouse.  TreeHouse stands ready to proceed with discovery on the merits and briefing of any motion to dismiss arguments deemed proper by the district court and should not be forced to wait on the sidelines while the Class Actions select lead counsel; negotiate over their class definitions, allegations, and claims; prepare a new consolidated class action complaint for both direct and indirect purchasers; brief and argue motions to dismiss the class complaint; take document, deposition, and expert discovery on issues specific to class certification; and brief and argue class certification motions.  Class action proceedings "do not pertain to [individual actions]," and, hence, the "individual action[s] [should not] be[] subjected to" them.  *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *2 (S.D. Cal. Aug. 8, 2011) (request for consolidation of class actions with individual action denied under Fed. R. Civ. P. 42(a)); *see In re Light Cigarettes Mktg. & Sales Practices* ("*Light Cigarettes*"), 652 F. Supp. 2d

---

[7] *TreeHouse Litig.*, ECF No. 29 (Mar. 20, 2014); *id.*, ECF No. 34 (Apr. 4, 2014).

1379, 1380-81 (J.P.M.L. 2009) (case that was "no longer a putative class action" not included in centralized proceedings with putative class actions); *see also In re Lloyds Bank PLC Int'l Mortg. Serv. Loan Litig.* ("*Lloyds*"), MDL No. 2501, ECF No. 27, at 1 (J.P.M.L. Feb. 14, 2014) (denying motion for centralization where procedural postures varied); *In re Brandywine Commc'ns Techs., LLC, Patent Litig.*, MDL No. 2462, 959 F. Supp. 2d 1377, 1379 (J.P.M.L. 2013) (same); *Apana v. Fairmont Hotels & Resorts (U.S.), Inc.*, 2009 WL 975779, at *3 (D. Hawaii Apr. 8, 2009) (same).

"Cases should not be consolidated if it would result in increased delay and other unnecessary burdens on parties, such as having to participate in discovery irrelevant to their cases." Manual for Complex Litigation (Fourth) § 20.11 (2004). As the movant class plaintiff recognizes, unlike TreeHouse, "plaintiffs in the Class Actions will [ ] have to satisfy the class action prerequisites of Rule 23," which is a lengthy process that often takes several years to complete prior to reaching the merits phase of litigation. Ney Mem. at 7. Class plaintiffs' pre-certification discovery will focus on issues that are not relevant to the *TreeHouse Litigation*, namely whether the evidence "is common to the members of the proposed class [and] whether the issues are susceptible to class-wide proof." Rep. of the Judicial Conference Committee on Rules of Practice and Proc. to the Chief Justice of the U.S. and Members of the Judicial Conference of the U.S. 10 (2002); *see also* Fed. R. Civ. P. 23 (requiring showing of numerosity, commonality, typicality, and adequacy of representation, among other things).

Pre-certification class discovery typically focuses on obtaining evidence to satisfy class plaintiffs' burden of proving that class-wide impact and damages will be susceptible of common proof. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 725 F.3d 244, 252 (D.C. Cir. 2013). These are technical and burdensome factual and expert issues that

bear no relevance to the *TreeHouse Litigation.   See, e.g.*, *In re Morrocanoil Trademark Litig.* ("*Morrocanoil*"), 777 F. Supp. 2d 1340, 1341 (J.P.M.L. 2011) (unique factual issues concerning damages rendered "centralization particularly inconvenient and unattractive").   Moreover, any pre-certification discovery overlapping with merits issues in class actions is strictly limited only to those merits aspects of the case that are relevant to making the certification decision.  *See* 5 Moore's Federal Practice § 23.85 [1] (Matthew Bender 3d ed. 2009) ("[D]istrict courts will allow discovery relevant to determining whether the requirements of Rule 23(a) are satisfied and whether the action is maintainable under one of the categories listed in Rule 23(b).").

TreeHouse was the first to file an action against Defendant in any of the related actions. Forcing a first-filed individual, competitor action to be unnecessarily stalled throughout numerous class procedures and discovery that have no application to the individual *TreeHouse Litigation* would not serve the goals of justice and efficiency embodied in Section 1407.  And it would be prejudicial to forestall TreeHouse's ability to obtain the injunctive relief it seeks to protect its business and to obtain the free and fair competition guaranteed by the antitrust laws. Even when the actions are filed against the same "defendants based on the same facts and events," the individual action "may proceed as an individual action, related to, but not consolidated with" the class actions.  *In re Bank of Am. Corp. Secs., Derivative & Emp't Ret. Income Sec. Act. (ERISA) Litig.*, 2010 WL 1438980, at *3 (S.D.N.Y. Apr. 9, 2010). Consolidation of individual actions with class actions is "not necessary" — even when the two sets of actions "arise[] out of the same facts and involve[] similar legal issues."  *Schueneman*, 2011 WL 3475380, at *2.

**B.**     **Consolidation or Transfer of the *TreeHouse Litigation* Would Be Unjust and Inefficient Because the Claims, Factual Issues, and Nature of Relief Sought By TreeHouse Are Substantially Different**

The *TreeHouse Litigation* should not be transferred or consolidated with the Class Actions or the other Competitor Action because TreeHouse has asserted substantially different claims.  TreeHouse, for example, is the only plaintiff to assert claims for: (1) Concerted Refusals to Deal and Group Boycott under Section 1 of the Sherman Act, 15 U.S.C. § 1, TreeHouse Compl. Count 10; (2) Violation of the Illinois Uniform Deceptive Trade Practices Act, *id.* Count 12; (3) Violation of Wisconsin Common Law Unfair Competition, *id.* Count 15; (4) Intentional Interference with Business Relations Under New York Law, *id.* Count 16; (5) Tortious Interference with Contract Under Wisconsin Law, *id.* Count 17; and (6) Tortious Interference with Prospective Business Expectancy Under Illinois Law, *id.* Count 18.  *See also* Ney Mem. at 3 (describing the related actions as alleging monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2); *Light Cigarettes*, 652 F. Supp. 2d at 1380-81 (case "encompass[ing] broader claims than those found in the [centralized] actions" not included in centralized proceedings).

The *TreeHouse Litigation* will focus on issues of fact specific to TreeHouse's unique interactions with Defendant and much of Defendant's anticompetitive conduct that has been specifically targeted at TreeHouse (such as the sham litigation against TreeHouse), and thus transfer or consolidation of the *TreeHouse Litigation* would be inappropriate and inefficient.  *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.* ("*HAMP*"), 746 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2010) (declining to transfer or consolidate individual actions with class actions because "[w]hile these [individual] actions may share some questions of fact with the putative class actions, they will focus to a large extent on individual issues of fact that are unique to each plaintiff's interactions with [defendant].").  As this Panel has previously

concluded, where, as here, individual plaintiffs have unique perspectives, "individual actions … should not be included in centralized proceedings." *Id.* at 1361.

Transfer or consolidation resulting in any delay of the *TreeHouse Litigation* would also be unjust because TreeHouse, unlike the class plaintiffs, would not be made whole by monetary damages. *See Light Cigarettes*, 652 F. Supp. 2d at 1380-81 (case seeking equitable relief not included in centralized proceeding where other cases sought monetary damages). As set forth in TreeHouse's Complaint, Defendant has publicly threatened to commit additional anticompetitive acts this fall by installing lock-out technology in its brewers to prevent TreeHouse's cup products from competing with K-Cups sold by Defendant. *See* Compl. ¶¶ 237-85. Defendant, moreover, has been actively confronting TreeHouse customers with this anticompetitive plan in order to take business away from Plaintiffs and then seeking to restrict TreeHouse's ability to compete for these customers in the future by entering into long-term, exclusive dealing contracts. *See* Compl. ¶ 286. Because Defendant is continuing to violate the law and threatening further violations in the future, TreeHouse Plaintiffs would be unduly prejudiced if there is any delay in its time-sensitive litigation. "The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice," such that "we must take care that each individual plaintiff's … cause not be lost in the shadow of a towering mass litigation." *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (quotations and citation omitted).

### C.    Transfer and Consolidation Are the Last Resort

As this Panel has noted, "[c]entralization under Section 1407 should be the *last* solution after considered review of all other options." *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F.

Supp. 2d 1368, 1368-69 (J.P.M.L. 2012) (emphasis added) (citing *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)).[8]

Rather, coordination outside the MDL process has been encouraged by the Panel as a viable alternative:

> *We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery.* For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts.

*Eli*, 446 F. Supp. at 244 (emphasis added); *see also In re Commonwealth Scientific & Indus. Research Organisation Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005) (referencing Man. for Complex Litig. § 20.14). As discussed below, TreeHouse believes that, with appropriate safeguards, this alternative may be suitable for these cases.

## II.    Voluntary Coordination of the Competitor Actions with the Class Actions Is an Existing, Feasible, and Efficient Alternative to Consolidation

TreeHouse does not in principle oppose coordination of discovery of factually overlapping issues provided that TreeHouse is permitted to expeditiously conduct the discovery to which it is entitled. Coordination between the *TreeHouse Litigation* and the other actions, if it can be accomplished without delay, could be most efficiently and justly achieved through informal, voluntary coordination outside of MDL proceedings.

---

[8] *See also In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.* ("*Spray*"), 949 F. Supp. 2d 1364, 1364-65 (J.P.M.L. 2013) ("encourag[ing] the parties to employ various alternatives to transfer which may minimize the potential for duplicative discovery and/or inconsistent pretrial rulings"); *Morrocanoil*, 777 F. Supp. 2d at 1341 ("encourag[ing] the parties to pursue various alternative approaches, should the need arise, to minimize the potential for duplicative discovery and inconsistent pretrial rulings"); *see also In re Webloyalty.com, Inc., Mktg. & Sales Practices Litig.*, MDL 2206, 768 F. Supp. 2d 1365, 1366 (J.P.M.L. 2011) (citing *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.* ("*Eli*"), 446 F. Supp. 242, 244 (J.P.M.L. 1978) and Man. for Complex Litig. § 20.14).

First, nine cases, including the *TreeHouse Litigation*, have *already* been related and designated by Judge Broderick for inclusion in the Complex Case Program in the Southern District of New York. *See In re Nat'l Credit Union Admin. Bd. Mortg.-Backed Secs. Litig.*, MDL No. 2505, ECF No. 44, at 2 (J.P.M.L. Feb. 12, 2014) (where related actions were coordinated before a single judge in each of three districts "alternatives to centralization exist[ed], in particular informal cooperation among the involved attorneys and coordination between the involved courts that may minimize … duplicative discovery or inconsistent pretrial rulings") (citing *Eli*, 446 F. Supp. at 244 and Man. for Complex Litig. § 20.14). The fact that the vast majority of related cases at issue here are already before the same judge – Judge Broderick – will help "avoid[] unnecessary duplication of effort, expense and burden on the Court and parties," thereby decreasing the need for any formal consolidation. *In re Rule 13 of the Rules for the Div. of Bus. Among Judges*, No. 1:13-mc-00432-P1, ECF No. 1, Rule 13 Comment at 108 (S.D.N.Y. Dec. 23, 2013). Moreover, the majority of cases here are *already being* "*coordinated*" by Judge Broderick. *TreeHouse*, ECF No. 31, at 1 (emphasis added) (Judge Broderick "direct[ed] the parties in all actions related [to the *TreeHouse Litigation*] to appear at the conference scheduled for May 1, 2014 … to address Defendants' proposed motion to dismiss and to discuss [ ] coordination"). Additionally, Defendant has already stipulated with plaintiffs in at least two Class Actions in different jurisdictions that Defendant will "use its best efforts to concurrently provide [ ] discovery to Plaintiff" that is provided "pursuant to a discovery notice, agreement or court order in any Related Action." *Major v. Keurig Green Mountain, Inc.*, No.14 Civ. 348 (SLR), ECF No. 6 (D. Del.); *Ney Silverman Ins. Assocs., LLC v. Keurig Green*

*Mountain, Inc.*, No. 14-CV-1671 (VSB), ECF No. 13 (S.D.N.Y. Apr. 8, 2014).  Hence, not only is coordination feasible in theory, it is already being successfully implemented.[9]

Second, not only is the Defendant identical in all of the actions — including the two Competitor Actions — but the Defendant is represented by the same law firm in all of the cases filed to date.  *See Spray*, 949 F. Supp. 2d at 1364-65 ("voluntary coordination among the parties [] many of whom are represented by the same counsel [] and the involved judges is a preferable alternative to centralization"); *In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (denying centralization where "alternatives to formal centralization, such as voluntary cooperation among the few involved counsel and courts, appear[ed] viable" where the common defendant was represented by the same counsel in all actions).  Thus, counsel for Defendant could easily coordinate any common issues with the two law firms representing competitors in the individual Competitor Actions and lead counsel for Class Plaintiffs.

Third, coordination of the Competitor Actions with the Class Actions would alleviate any potential concerns of duplicated efforts or inconsistent rulings.  Such informally coordinated discovery "addresses [ ] concerns regarding duplicated efforts and the danger of inconsistent rulings while allowing [the non-class action plaintiff] to pursue [its] individual action without being subjected to class action proceedings that do not pertain to [it]."  *Schueneman*, 2011 WL

---

[9] Even if the Panel consolidated and transferred the Class Actions to a new jurisdiction for MDL proceedings, this would leave only three courts involved in coordination, including the Southern District of New York, where the *TreeHouse Litigation* was filed, and the Eastern District of California, where the *Rogers Litigation* was filed.  *See Lloyds*, ECF No. 27, at 1 (denying centralization and finding "[i]nformal coordination … practicable" where there were a small number of involved courts, *inter alia*); *Nat'l Credit Union*, MDL No. 2505, ECF No. 44, at 2 (denying centralization and finding that "coordination between the involved courts" when "the actions are pending before only three district judges" is an alternative to centralization).

3475380, at *2; *see TreeHouse Litig.*, ECF No. 31, at 1 (ordering pre-motion conference to discuss coordination between related parties).

### III.   The Most Appropriate Forum Is the Southern District of New York Before Judge Broderick

For the reasons discussed in Section I, TreeHouse opposes any transfer of the *TreeHouse Litigation*, which was the first-filed action and has been progressing before Judge Broderick more quickly than any other action.  *See infra* Arg. §§ III(A), (D).  In the event that the Panel transfers or consolidates any of the related actions, however, TreeHouse agrees with the moving class plaintiff that the most appropriate forum for all cases is before Judge Vernon S. Broderick in the Southern District of New York.  *See also* Ney Mem. at 3-4, 8-13.

The Panel analyzes a number of factors to determine which forum best serves "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Southern District of New York is the most appropriate forum due to the following factors falling squarely in its favor: (a) the location of the first-filed case; (b) the location of cases already pending; (c) the proposed judge's caseload; (d) the progress of cases already pending; (e) the proposed judge's experience and efficiency; (f) the proposed forum's experience and efficiency; (g) the proposed forum's accessibility; and (h) the location of counsel.

### A.   The First-Filed Action, the *TreeHouse Litigation*, Was Filed in the Southern District of New York

As the movant class plaintiff noted, this Panel has "expressed a preference for transfer to the forum in which the first-filed action is pending."  Ney Mem. at 8-9 & n.10.  Indeed, when this Panel orders actions to be transferred, it routinely does so to the forum of the first-filed action.  *See, e.g.*, *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 908 F. Supp. 2d 1381 (J.P.M.L. 2012) (centralization in district where first-filed and slightly more procedurally

advanced action is pending); *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (noting "[a]s we have previously held, it is appropriate to give 'the first-filed criterion some weight in selecting a transferee district'") (citation omitted); *In re Mattel Inc. Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) (transferring actions to forum of first-filed action); *In re iPhone/iPad Application Consumer Privacy Litig.*, MDL. No. 2250, ECF No. 51, at 2 (J.P.M.L. Aug. 8, 2011) (same); *In re Prograf Antitrust Litig.*, MDL No. 2242, ECF No. 26, at 2 (J.P.M.L. June 3, 2011) (same); *In re AutoZone, Inc., Wage & Hour Empl. Practices Litig.*, 717 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010) (same).

**B.    The Majority of Actions Are Already Related and Pending in the Southern District of New York Before Judge Broderick**

The Panel frequently selects as the most appropriate forum the district in which the highest number of actions is already pending.  *See In re Emerson Elec. Co. Wet/Dry Vac Mktg. & Sale Practices Litig.*, 885 F. Supp. 2d. 1383, 1384 (J.P.M.L. 2012) (district chosen where four of the five actions were pending); *In re Joseph P. Smith Patent Litig.*, 407 F. Supp. at 1403, 1405 (J.P.M.L. 1976) (district chosen where "more actions pending … than in any other").[10]  The majority of the actions — 10 out of 15 — are already before the Southern District of New York and are or soon will be before Judge Broderick.[11]  The other districts each have pending before

---

[10] *See also In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006) (transferring actions to forum where the majority of related actions had been filed); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2002) (transferring to forum where forty out of fifty-four actions were pending, based in part because "most of the actions have been brought [in that district]").

[11] Nine cases are already related and assigned to Judge Broderick.  *See Rosen v. Keurig Green Mountain Coffee Roasters, Inc.*, No. 14-cv-2255 (VSB) (S.D.N.Y.) (filed Apr. 1, 2014); *Springer v. Keurig Green Mountain Coffee Roasters, Inc.*, No. 14 2267 (VSB) (S.D.N.Y.) (filed Apr. 1, 2014); *Rosenthal Inc. v. Keurig Green Mountain, Inc.*, No. 14-cv-2219 (S.D.N.Y.) (filed Mar. 28, 2014); *Cusimano Carstar Collison, Inc. v. Keurig Green Mountain Coffee Roasters, Inc.*, No. 14-cv-1963 (VSB) (S.D.N.Y.) (filed Mar. 20, 2014); *Constantino v. Green Mountain Keurig,*

them only one or at most two actions and collectively represent a minority of actions — one of which is an individual Competitor Action inappropriate for consolidation.[12]  These facts easily make the Southern District of New York the best choice for any multidistrict litigation.  *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) (finding most appropriate district in which "[m]ore than half of the related actions are pending [ ], including the first-filed action"); *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351, 1353 (J.P.M.L. 2004) (holding transferee district "is where the first filed and largest number of actions are pending").[13]

### C.    Judge Broderick's Docket Will Allow Him to Adjudicate This Litigation in an Efficient Manner

Judge Broderick is well-equipped to handle this litigation.  He neither has a multidistrict litigation already pending before him nor an overcrowded docket, as he has only recently begun

---

*Inc.*, No. 14-cv-1836 (VSB) (S.D.N.Y.) (filed Mar. 17, 2014); *Rocker v. Green Mountain Keurig, Inc.*, No. 14-cv-1716 (VSB) (S.D.N.Y.) (filed Mar. 12, 2014); *Ney Silverman Ins. Assocs., LLC v. Green Mountain Coffee Roasters, Inc.*, No. 14 Civ. 1671 (VSB) (S.D.N.Y.) (filed Mar. 11, 2014); *Hoyer v. Green Mountain Coffee Roasters, Inc.*, No. 14-cv-1609 (VSB) (S.D.N.Y.) (filed Mar. 10, 2014); *TreeHouse Litig.* (S.D.N.Y.) (filed Feb. 11, 2014); *see* Ex. A.  An additional action filed yesterday in the Southern District of New York will likely also be related and assigned to Judge Broderick.  *See Overton v. Green Mountain Coffee Roasters, Inc.*, 14-cv-2530 (S.D.N.Y) (filed Apr. 9, 2014).

[12] *See Gray v. Keurig Green Mountain, Inc.*, No. 14-cv-00696-DMS (S.D. Cal.) (filed Mar. 26, 2014); *Schroeder v. Keurig Green Mountain, Inc.*, No. 14-cv-678 (DMS) (S.D. Cal.) (filed Mar. 24, 2014); *Major v. Keurig Green Mountain, Inc.*, No. 14-cv-348 (SLR) (D. Del.) (filed Mar. 19, 2014); *Rizzo v. Keurig Green Mountain, Inc.*, No. 14-cv-11030 (RAZ) (D. Mass.) (filed Mar. 19, 2014); *Rogers Litig.*, (E.D. Cal.) (filed Mar. 13, 2014) (Competitor Action); *see* Ex. A.

[13] Although three cases are pending in California, it is not necessary to transfer the cases to California in order to resolve those claims because the California state law claims brought by the California plaintiffs have also been brought in the Southern District of New York and are pending in front of Judge Broderick.  *See Rosenthal v. Keurig Green Mountain, Inc.*, Case No. 14-cv-2219, ECF No. 1, ¶ 155 (S.D.N.Y. Mar. 28, 2014) (alleging violations of the California Cartwright Act and California Unfair Competition Law).

presiding on the bench in 2013.[14]  And, as demonstrated by his activities in this very matter, Judge Broderick also manages his docket in an efficient fashion, fitting for injunctive relief.

### D. The Cases in the Southern District of New York Have Progressed Farther Than in Any Other Court and Judge Broderick Already Has Substantial Experience with This Case

Judge Broderick has already been assigned to most of the cases at issue, and he has been involved with the litigation since the filing of the very first complaint.  The *TreeHouse Litigation* was filed in the Southern District of New York and assigned to Judge Broderick at least one to two months before the other actions were filed.  Since that time, he agreed with the designation of the *TreeHouse Litigation* for inclusion into the Complex Case Program; related eight other cases to it; ordered pre-motion letter briefings on a possible motion to dismiss; analyzed and considered pre-motion letter briefings from both TreeHouse and Defendant concerning motion to dismiss arguments and Defendant's first request to adjourn the initial pretrial conference; scheduled pre-motion arguments and an initial pretrial conference date; reviewed letter briefings concerning Defendant's second request to adjourn the initial pretrial conference and to stay the *TreeHouse Litigation*; and issued an Order requiring all related actions before him to attend a pretrial conference and hearing to discuss coordination between the *TreeHouse Litigation* and the related Class Actions on May 1, 2014, which will have taken place prior to the time this Panel rules on the motion here.  *TreeHouse Litig.*, ECF No. 3 (Feb. 11, 2014); *id.*, ECF No. 16 (Mar. 10, 2014); *id.*, ECF No. 24 (Mar. 13, 2014); *id.*, ECF No. 25 (Mar. 14, 2014); *id.*, ECF No. 27 (Mar. 17, 2014); *id.*, ECF No. 29 (Mar. 20, 2014); *id.*, ECF No. 30 (Mar. 21, 2014); *id.*, ECF No.

---

[14] *See* Ney Mem. at 13 (collecting cases; "[t]he Panel has often recognized the desirability of transferring multidistrict litigation to a judge who 'is not currently assigned to another such docket,' and thus will be well-equipped to manage the litigation"); *see also In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (assigning litigation to a "capable judge who has not yet presided over an MDL").

31 (Mar. 28, 2014); *id.*, ECF No. 34 (Apr. 4, 2014); *id.*, ECF No. 35 (Apr. 9, 2014). Judge Broderick is thus already familiar with the issues and parties in these cases and indeed is more involved with these cases than any other judge to date, as no other judge has entertained any motion to dismiss arguments or coordination proposals.  The fact that Judge Broderick "has become particularly familiar with the claims at issue" weighs heavily in favor of his selection. *See, e.g.*, *In re Neurontin Mktg. & Sales Practices Litig.* ("*Neurontin*"), 342 F. Supp. 2d 1350, 1352 (J.P.M.L. 2004) (district selected where judge "already thoroughly familiar with the issues of fact and law raised"); *see also* Ney Mem. at 9-10 (citations omitted).

The cases before Judge Broderick in the Southern District of New York have progressed farther than any other case.  Only one other judge, the judge presiding over the *Rogers Litigation*, has even scheduled an initial pretrial conference, but that conference is the subject of a stay motion and is set in any event for July 31, 2014[15] — *nearly three months after* Judge Broderick will have already begun coordinating the *TreeHouse Litigation* with all of the related Class Actions filed in the Southern District of New York.

### E.    Judge Broderick Has Substantial Expertise with Complex Commercial Litigation and Its Effective Management

Judge Broderick is one of the select judges chosen to administer the Complex Case Program.[16]  Moreover, Judge Broderick was intimately involved in the Program's development. In 2011, he was appointed to the Complex Case Program Advisory Committee of experienced attorneys that "consider[ed] and recommend[ed] best practices for the management of complex civil cases" and went on to create the proposal approved for the Complex Case Project itself.  *In*

---

[15] *See* Order Setting Status (Pretrial Scheduling) Conference, *JBR, Inc. v. Keurig Green Mountain, Inc.*, No 2:14-cv-00677, ECF No. 3 (Mar. 13, 2014).
[16] *See supra* Background at 2 & n.2; Ney Mem. at 12-13; *see also In re Maxim Integrated Prods., Inc. Patent Litig.*, 867 F. Supp. 2d 1333, 1336 (J.P.M.L. 2012) (selecting a judge and district that participated in a pilot program).

*re Pilot Project re Case Mgmt. Techniques for Complex Civil Cases in the S.D.N.Y.*, No. 1:11-mc-00388-LAP, ECF No. 1, at 4-5 (S.D.N.Y. Nov. 1, 2011).[17]

Additionally, Judge Broderick has substantial private practice expertise with complex commercial litigation, which is relevant to a consideration of his expertise. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2502, ECF No. 103, at 3 (Feb. 18, 2014) (judge selected that was already presiding over almost all cases and was in private practice for 20 years, *inter alia*). Judge Broderick was in private practice at Weil, Gotshal & Manges from 1988 to 1994 and then from 2005 to 2013, thereby garnering almost 16 years of experience with similar commercial litigation and relevant procedural complexities. Judge Broderick is "well versed in the nuances of complex … litigation" and, hence, should be selected. *In re Aggrenox Antitrust Litig.*, MDL No. 2516, 2014 WL 1338421, at *1 (J.P.M.L. Apr. 3, 2014) (selecting judge "well versed in the nuances of complex … litigation").

### F.   The Southern District of New York Has Considerable Experience with Similar Cases and Is Well-Equipped to Handle a Complex MDL

The Southern District of New York also has extensive experience managing complex litigation, including multidistrict litigation containing complex antitrust claims. *See* Ney Motion for the Transfer of Related Actions to the S.D.N.Y. for Coordinated or Consolidated, ECF No. 1-1 ("Ney Mot.") (Mar. 20, 2014), at 3; Ney Mem. at 11-12 (collecting cases). A transferee court's experience in handling similar actions weighs significantly in that forum's favor. *See, e.g.*, *Neurontin*, 342 F. Supp. 2d at 1351. The Southern District of New York would also be well-equipped to handle a complex MDL because of its MDL-experienced clerk's office and the

---

[17] Magistrate Judge Henry Pitman – currently assigned to TreeHouse and its related cases – was also involved in the creation of the Complex Case Project. He was a member of the Judicial Improvements Committee that first considered the Complex Case Project and helped bring it to fruition. *Id.* at 4 & n.1.

District's efficient disposition of cases.  The Southern District of New York disposes of cases in a median 8.3 months, which is faster than the national median.[18]

### G.      Manhattan Is the Most Accessible and Convenient Location

For those parties and counsel who may need to travel, the Southern District of New York is conveniently and accessibly located in Manhattan.  This Panel consistently gives ardent consideration to accessibility when selecting a transferee forum.[19]  Manhattan is one of the most accessible locations to travel to within the United States.  *See* Ney Mem. at 10-11 (agreeing). The Panel has accordingly concluded that the Southern District of New York is very conveniently located for parties, witnesses, and the few counsel involved with these cases who are not already located in New York.  *In re Parmalat Secs. Litig.*, 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004); *see also In re Rhodia S.A. Sec. Litig.*, 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005) (S.D.N.Y. "provides an accessible, metropolitan location"); *In re Fed. Home Loan Mortg. Corp. Secs. & Derivative Litig.*, 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004) (S.D.N.Y. "is readily accessible for parties and witnesses"); *see also* Ney Mem. at 10-11 ("the convenience of the parties and counsel is best served by choosing a central location in a city which is large enough to provide all necessary litigation support services and amenities").

### H.      The Majority of Counsel Has an Office in the Southern District of New York

In addition to the location of each action, the Panel also considers the location of counsel litigating the cases.  *See, e.g.*, *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 802 F. Supp. 2d 1367, 1368 (J.P.M.L. 2011) (forum selected where forum convenient location for counsel); *In re*

---

[18] Annual Report of the Director of the Admin. Office of the U.S. Courts (2013), Table C-5 at 1.

[19] *See, e.g.*, *In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, 804 F. Supp. 2d 1382, 1384-85 (J.P.M.L. 2011) (selected a forum that is "accessible for parties and witnesses located throughout the United States"); *In re NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008) (selected "readily accessible district with the capacity to handle this litigation").

*Hypodermic Prods. Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (same).  Here, "virtually all of the parties in the Related Actions are represented by counsel who have offices in the Southern District of New York," including Defendant's lead counsel.  Ney Mot. at 10.

## CONCLUSION

TreeHouse respectfully requests the Panel decline to transfer or consolidate the *TreeHouse Litigation* through MDL proceedings.  Rather, TreeHouse respectfully requests that the case remain in the Southern District of New York where the Judge there, in his discretion, can assess potential coordination of proceedings without creation of undue delay.

Dated:   New York, New York
April 10, 2014

WINSTON & STRAWN LLP
Attorneys for Plaintiffs TreeHouse, Inc.,
Bay Valley Foods, LLC, & Sturm Foods, Inc.

By:  _____s/ Dan K. Webb_____

Dan K. Webb
dwebb@winston.com
James F. Herbison
jherbison@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600

Aldo A. Badini
abadini@winston.com
Susannah P. Torpey
storpey@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700

Diana L. Hughes
dhughes@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111
(415) 591-1000

19