BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | MDL No.  2542 |

**MEMORANDUM OF RESPONDENT ROGERS
IN OPPOSITION TO MOTION TO TRANSFER ACTIONS
FOR COORDINATED PRETRIAL PROCEEDINGS**

## I.      INTRODUCTION

Plaintiff Ney Silverman Insurance Associates, LLC ("Silverman") has moved this Panel to transfer and coordinate or consolidate several antitrust actions against Defendant Keurig Green Mountain, Inc. (f/k/a Green Mountain Coffee Roasters, Inc. and as successor to Keurig, Incorporated) ("Keurig") under 28 USC § 1407.  Silverman seeks to have Plaintiff JBR, Inc.'s (d/b/a Rogers Family Company) ("Rogers") case against Keurig transferred to the U.S. District Court for the Southern District of New York and coordinated with six class actions and a competitor action that were also recently filed against Keurig.  While Rogers agrees that *coordination* with the other cases may be appropriate, Rogers opposes Silverman's request to *transfer* Rogers' case.

Rogers' claims against Keurig are largely unique to Rogers as they are based on Keurig's actions specifically directed at Rogers, a direct competitor of Keurig.  For example, Rogers alleges that Keurig uses its dominant market power to block Rogers' entry to the "away from home" market segment by coercing office supply distributors to enter into exclusive agreements that prohibit them from selling Rogers' coffee products.  Rogers Compl., ¶¶ 74-77.[1]  Similarly, Keurig forces its "at home" distributors to enter into exclusive agreements.  *Id*., ¶¶ 78-80.  Rogers also alleges that Keurig makes false and disparaging assertions about Rogers' OneCup products to customers, falsely stating that the OneCup product will do damage to Keurig

---

[1] Copies of the complaints referenced herein were attached to and filed with the Silverman Motion.  *See*. Dkt. Nos. 1-4 to 1-11.

machines. *Id.*, ¶¶ 81-83. Rogers also alleges that Keurig's plans to launch a new single-serve brewer ("Keurig 2.0") that will entirely replace all previous models of Keurig brewers and will lockout Rogers' OneCup products, and that Keurig's public announcement and aggressive campaign to explain the lockout feature to distributors has caused fear, uncertainty and doubt among Rogers' current and potential customers. *Id.*, ¶¶ 11, 84-112. Rogers also alleges that Keurig vigorously pursued objectively baseless patent claims against Rogers. *Id.*, ¶¶ 58-72. Each of these acts detailed in Rogers' complaint caused Rogers to lose business and goodwill among its customers. *Id.*, ¶¶ 119-21.

Moreover, Rogers expects to soon file a motion for a preliminary injunction and associated motion for expedited discovery to prevent Keurig from continuing its campaign to cut off competition in the single-serve portion pack coffee market through anticompetitive conduct. Given that Rogers makes claims based on Keurig's conduct directed at Rogers, most of the relevant witnesses and documents in Rogers' case are located in the Eastern District of California, where Rogers' claims are pending and its principal place of business is located. Rogers is not aware of any witnesses relevant to its case that are located in the Southern District of New York. Convenience of witnesses and efficient discovery in Rogers' case would not be served by transfer.

Importantly, Silverman does not seek *consolidation* of Rogers' case with the other cases that are the subject of its Motion. Rather, as to the Rogers case, the Motion seeks only "coordination, not consolidation, of pretrial proceedings…." Mot. at 2. As discussed below, Rogers concurs that its case should be informally coordinated with the class actions and TreeHouse Foods case. Coordination of these cases, however, does not require Rogers' case to be transferred. Indeed, this Panel routinely holds that transfer is not necessary for coordination. *See In re: Diversified Lending Grp., Inc., Sec. Litig.*, 732 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (denying centralization of 8 litigants in 3 districts and noting that "several parties have stated their willingness to cooperate and informally coordinate discovery among the actions ….such voluntary cooperation may be the best way to minimize the potential for duplicative discovery

and/or inconsistent pretrial rulings."); *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (denying § 1407 motions for centralization and noting that "centralization under Section 1407 should be the last solution after considered review of all other options."). Thus, voluntary coordination of discovery in the cases, including cross-noticing depositions and using a joint repository of document productions and written discovery, would be the most efficient method to address any overlap in relevant discovery. *See Manual for Complex Litigation*, § 20.14 (2004).

Rogers' complaint raises many claims and questions of law and fact not relevant to the other cases. Transfer of Rogers' case thus would only serve to create inefficiencies and would unnecessarily inconvenience all parties and the relevant witnesses. Moreover, transfer would unduly prejudice Rogers by delaying rulings on Rogers' forthcoming motions for a preliminary injunction and for expedited discovery, and would therefore prolong Keurig's illegal conduct that is currently causing irreparable harm to Rogers' OneCup business. Thus, while Rogers stands ready to coordinate discovery with the other cases against Keurig, transfer is unwarranted and Silverman's Motion should be denied with respect to Rogers.

## II.   BACKGROUND

The cases at issue in Silverman's Motion can be characterized as three distinct sets of actions: (i) the actions that Silverman defines in its Motion as the "Class Actions," and which are essentially one "action" in that they share "virtually identical" questions of fact (Mot. at 5) and likely all will be consolidated, interim lead class counsel appointed and a consolidated complaint filed;[2] (ii) the competitor suit, *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee*

---

[2] These include six class action suits – *Ney Silverman Insurance Associates, LLC v. Keurig Green Mountain, Inc., et al.*, Case No. 14-cv-01671 (S.D.N.Y. Mar. 11, 2014); *Hoyer v. Green Mountain Coffee Roasters, Inc., et al.*, Case No. 14-cv-01609 (S.D.N.Y. Mar. 10, 2014); *Rocker v. Green Mountain Keurig, Inc., et al.*, Case No. 14-cv-01716 (S.D.N.Y. Mar. 12, 2014); *Constantino v. Keurig Green Mountain, Inc., et al.*, Case No. 14-cv-01836 (S.D.N.Y. Mar. 17, 2014); *Major v. Keurig Green Mountain, Inc., et al.*, Case No. 1:14-cv-00348-UNA (D. Del. Mar. 19, 2014); and *Rizzo v. Keurig Green Mountain, Inc., et al.*, Case No. 1:14-cv-11030 (D. Mass. Mar. 19, 2014) – (collectively, the "Class Actions").

*Roasters, Inc.*, *et al.*, Case No. 14-cv-00905 (S.D.N.Y. Feb. 11, 2014); and (iii) Rogers' action, captioned *JBR, Inc. v. Keurig Green Mountain, Inc.*, Case No. 2:14-cv-00677-KJM-CKD (E.D. Cal. Mar. 13, 2014).  Rogers' complaint focuses on its right as an independent manufacturer to compete fairly against Keurig in the single-serve portion pack coffee market.  Rogers' complaint is readily distinguished in many respects, both legally and factually, from the Class Actions and the TreeHouse Foods case.

*First*, Rogers' claims focus on anticompetitive conduct that Keurig has directed towards Rogers and harm that Keurig has inflicted on Rogers itself, in addition to the market for single-serve coffee products.  Unlike the Class Action plaintiffs who purchased directly or indirectly from Keurig, Rogers is a competitor of Keurig in the single-serve portion pack coffee market.  Keurig is the dominant manufacturer of single-serve brewers and single-serve portion packs of coffee used in those brewers.  Rogers manufactures and sells a unique single-serve portion pack, the OneCup, that is compatible with (*i.e.*, that works in) Keurig brewers.  As alleged in Rogers' complaint, Keurig uses its dominant market power to coerce office supply distributors and other Keurig customers to enter into exclusive agreements that prohibit them from selling Rogers' OneCup products.  Rogers' Compl., ¶¶ 73-79.  As a direct result of this conduct, Rogers has lost, and continues to lose, business and goodwill among its customers and ultimately Keurig will succeed in destroying Rogers' business.  *Id.*, ¶¶ 119, 137.  These claims, for Rogers' loss of business, are not alleged in the Class Action or TreeHouse complaints.

*Second*, Rogers alleges that Keurig has made false and disparaging assertions about Rogers' OneCup products to both potential and existing Rogers' customers.  *Id.*, ¶¶ 81-83.  In particular, Keurig has made baseless statements questioning the safety and quality of Rogers' OneCup products, directly stating that Rogers' products will damage Keurig machines and may

---

In addition to the cases presently before this panel, four additional class action lawsuits have been filed: *Schroeder et al v. Keurig green Mountain, Inc. et al.*, 3:14-cv-00678 (S.D. Cal.); *Gray et al v. Keurig Green Mountain, Inc. et al.*, 3:14-cv-00696 (S.D. Cal.); *David Rosenthal v. Keurig Green Mountain, Inc.*, 1:14-cv-02219 (S.D.N.Y.); *Rosen v. Keurig Green Mountain, Inc., et al.,* 1:14-cv-02255 (S.D.N.Y.).

void the machines' warranty.  *Id.*, ¶ 82.  These disparaging comments regarding Rogers' products are another example of Keurig's conduct directly causing Rogers to lose business and goodwill among its customers.  *Id.*, ¶¶ 201, 206.  These claims are also not alleged in the Class Action or TreeHouse Complaints.

*Third*, Keurig has announced plans to launch a new single-serve brewer, Keurig 2.0, that will entirely replace all previous models of Keurig brewers and purportedly will include a technology that prevents the brewer from operating with competitors' single-serve portion packs of coffee, including Rogers' OneCup products.  *Id.*, ¶¶ 84-112.  Keurig's public announcement and aggressive campaign to warn that the Keurig 2.0 will lockout competitor portion packs have caused fear, uncertainty and doubt among Rogers' current and potential customers.  *Id.*, ¶ 131.  This conduct serves as yet another example of Keurig's actions directly causing Rogers to lose business and goodwill among its customers.  *Id.*, ¶¶ 179, 201.  Although the Class Action and TreeHouse complaints also include claims based upon Keurig's introduction of Keurig 2.0, Rogers' claims will rely on unique evidence regarding (i) the compatibility of Rogers' OneCup product with Keurig 2.0, (ii) Keurig's statements and conduct related to Keurig 2.0 specific to Rogers' customers and potential customers; and (iii) the irreparable harm to Rogers that has caused and continues to be caused as a result of Keurig's conduct with regard to Keurig 2.0.

*Fourth*, Keurig vigorously pursued– and decisively lost– an objectively baseless patent lawsuit against Rogers.  Prior to 2011, Keurig had virtually no competition in the market for single-serve portion packs of coffee that work in Keurig brewers.  In 2010 and 2011, respectively, two companies, Sturm Foods, Inc. and Rogers, introduced competing single-serve portion packs of coffee that utilized a design different from that of the Keurig "K-Cup" and thus that did not require a license from Keurig.  Within weeks of the launch of each of these products, Keurig filed lawsuits against Sturm Foods, Inc. and Rogers, asserting patent infringement in its attempt to protect its complete domination over the market.  Both of Keurig's lawsuits were soundly rejected by their respective courts, which granted summary judgments against Keurig,

and were quickly affirmed in each case on appeal.[3]  The Federal Circuit expressly criticized Keurig for "attempting to impermissibly restrict purchasers of Keurig brewers from using non-Keurig cartridges by invoking patent law to enforce restrictions on the post-sale use of its patented product." *Keurig, Inc. v. Sturm Foods, Inc*., 732 F.3d 1370, 1374 (Fed. Cir. 2013) (noting that "[t]o rule otherwise would allow Keurig what the Supreme Court has aptly described as an 'end-run around exhaustion'…").  Notwithstanding their patent lack of merit, Keurig's lawsuits nevertheless succeeded in creating fear and misunderstanding in the market and in forcing Rogers to spend valuable time and resources defending against the baseless lawsuit rather than competing in the market.  These claims are not raised in the Class Actions.

The competitor claims are also dissimilar and will rely on separate evidence.  Keurig invoked different patent claims to attack Sturm Foods on the one hand, whose compatible portion pack brews via a filterless pack containing instant coffee, and Rogers on the other, whose OneCup brews premium ground, filtered coffee without the Keurig K-Cup's exterior plastic shell.[4]  The timing and procedural history of each complaint is also much different.  Notably, Keurig continued to pursue its appeal of the summary judgment granted in favor of Rogers even after it failed spectacularly in its appeal against Sturm.  Ultimately, the competitor claims will involve different evidence, witnesses and issues.

*Fifth*, highlighting the singularity of  Roger's case against Keurig, Rogers imminently expects to file motions for a preliminary injunction and for expedited discovery to stop the irreparable harm Rogers suffers as a result of Keurig's continuing campaign to cut off competition in the single-serve portion pack coffee market through anticompetitive conduct.  Specifically, Rogers will seek a preliminary injunction preventing Keurig from: (1) enforcing the

---

[3] *Keurig, Inc. v. Sturm Foods, Inc.*, CIV. 10-841-SLR, 2012 WL 4049799 (D. Del. Sept. 13, 2012); *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370 (Fed. Cir. 2013); *Keurig, Inc. v. JBR, Inc.*, CIV.A. 11-11941-FDS, 2013 WL 2304171 (D. Mass. May 24, 2013); *Keurig, Inc. v. JBR, Inc.*, 2013-1478, 2014 WL 943691 (Fed. Cir. Mar. 12, 2014).
[4] The differences can best be viewed visually.  *Cf.* http://www.singleservecoffee.com/archives/034554.php (Sturm Foods) with http://vimeo.com/84635409 at 1:51 (Rogers).

exclusivity provisions of Keurig's "Keurig Authorized Distributor" agreements, which prohibit Keurig's distribution partners from selling single-serve portion packs that are not licensed by Keurig; (2) making disparaging statements to Rogers' potential and current customers that Rogers' and other competitors' competing single-serve portion packs will damage Keurig brewers and/or do not provide adequate safety, consistency or quality when used with Keurig brewers; and (3) promoting or implementing the announced lockout feature of its purportedly forthcoming Keurig 2.0 brewer.  Any delay caused by transfer of Rogers' case would only exacerbate the continuing, irreparable harm that Rogers seeks to prevent through its forthcoming motion for a preliminary injunction.

The unique nature of Rogers' claims against Keurig and the resulting harm to Rogers alone dwarfs any factual overlap between Rogers' case, the Class Actions, and the TreeHouse case.  Any desired efficiencies in conducting joint discovery should be obtained through voluntary coordination of discovery in the cases, not through temporary transfer and centralization under § 1407.

## III.  LEGAL STANDARD

The requirements for transfer and coordination under 28 U.S.C. § 1407 are twofold:  first, there must be "civil actions involving one or more common questions of fact… pending in different districts."  28 U.S.C. § 1407(a).  Second, the Judicial Panel on Multidistrict Litigation ("Panel") must make a "determination that transfer will promote the just and efficient conduct of such actions."  *Id.*  Even if pending actions share a common factual core, they should not be centralized absent a persuasive showing that the interests of judicial efficiency would be served. *See In Re: Adderall XR,* 2013 WL 4015749 (J.P.M.L. 2013) ("We acknowledge that these actions share a common factual core… However, we are not persuaded, on the record before us, that centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation.").  The moving party bears the burden of showing that the interests of judicial efficiency would be served by transfer of the case for centralization.  *See In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980)

(denying motion when "movant has not met its burden of demonstrating that transfer will further the purposes of Section 1407.").

Where, as here, the movant seeks coordination of the Rogers and TreeHouse actions, rather than consolidation, the Panel has found that the parties can coordinate pre-trial discovery without transfer under § 1407.  *See In re: Diversified Lending Grp., Inc., Sec. Litig.*, 732 F. Supp. 2d at 1379 (with six named plaintiffs in the Central District of California, two in the Middle District of Florida and two in the Western District of Michigan, noting "[g]iven the limited number of cases and their concentration in the Central District of California, coordination of the litigation among various judges should not be difficult"); *In re: Spray Polyurethane Foam Insulation Products Liab. Litig.*, 949 F. Supp. 2d 1364, 1364-65 (J.P.M.L. 2013) ("voluntary coordination among the parties (many of whom are represented by the same counsel) and the involved judges is a preferable alternative to centralization."); *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d at 1378 (denying § 1407 motions for centralization and noting that "centralization under Section 1407 should be the last solution after considered review of all other options.").[5]

Examples of such voluntary coordination were described by the Panel in *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978):

---

[5] *See also In re: Global Distribution Sys. (GDS) Antitrust Litig.*, 816 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011) (denying centralization with four litigants and noting that "[i]n these circumstances, we believe that informal cooperation among the involved attorneys is both practicable and preferable."); *In re: Capatriti Brand Olive Oil Mktg. & Sales Practices Litig.*, 963 F. Supp. 2d 1381, 1382 (J.P.M.L. 2013) (denying centralization of three litigants, noting that "[a]lternatives to formal centralization—such as transfer under 28 U.S.C. § 1404 or voluntary cooperation among the few involved counsel and two judges—therefore appear to be workable and, in our judgment, preferable to centralization in these circumstances."); *In re: Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Products Liab. Litig.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012)  (denying centralization of five litigants in four districts, noting that "[w]e consider voluntary coordination among the parties and the involved courts of these relatively few actions to be a preferable alternative to centralization at this time.").

> We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery.  For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts….

*Id*. (citing *In re Commercial Lighting Products, Inc. Contract Litigation*, 415 F.Supp. 392, 393 (J.P.M.L. 1976) and Manual for Complex Litigation, Parts I and II, § 3.11 (rev. ed. 1977)).

Moreover, non-class actions need not be burdened with the lengthy class action procedures and discovery which do not apply to the competitor actions.  *See, e.g., Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM (BLM), 2011 WL 3475380, at *2 (S.D. Cal. Apr. 8, 2011) (consolidating class actions but not individual action and ordering coordinated discovery among all actions, noting that "[t]his course of action addresses Defendants' concerns regarding duplicated efforts and the danger of inconsistent rulings while allowing Mr. Sharp [plaintiff in the individual action] to pursue his individual action without being subjected to class action proceedings that do not pertain to him.").

## IV.   ARGUMENT

### A.   Efficiency and the Convenience of the Parties and Witnesses Would Be Best Served By Coordination of Rogers' Case Without Transfer.

Though superficially similar, the Class Actions, TreeHouse's complaint and Rogers' complaint are founded on diverse legal and factual theories, and the resulting need for individualized discovery is antithetical to centralization under § 1407.  Additionally, centralizing the competitor complaints would introduce significant inefficiencies due to the sensitive nature of competitor information, complexity of the various state regulatory regimes, and different procedural postures of the parties.  Judicial efficiency would best be served by leaving Rogers in the Eastern District of California, a location central to key witnesses and discoverable information unique to Rogers' complaint.

1.     **The Factual Overlap Between Rogers' Case and the Other Complaints is Superficial and Outweighed by Unique Legal and Factual Issues.**

Centralizing Rogers' action under § 1407 would burden the Class Actions' docket with myriad factual issues and legal questions not germane to them, while providing no relief from duplicative discovery that could not otherwise be accomplished through informal coordination. Although Movant Silverman asserts that ten questions are common between the Class Action and TreeHouse Foods parties, those questions relate to only a single legal claim– monopolization under 15 U.S.C. § 2. *See* Mot. at 5-6. This superficial similarity is just the tip of an iceberg beneath which lie numerous dissimilar factual and legal issues. A review of the varied complaints against Keurig reveals 26 separate causes of action invoked on diverse legal grounds including at least three different federal statutes, six different state business codes, two sham litigation claims based on different previously litigated patent lawsuits, and common law claims under the laws of at least three different jurisdictions.[6] Seventeen of these causes of action, focused on sham litigation, unfair competition, and other business torts, are entirely absent from the Class Actions. Conversely, unlike the competitors, none of the Class Action plaintiffs have pled any of the following claims pled by Rogers: (1) Sham Litigation, (2) Patent Misuse, (3) Concerted Refusal to Deal & Group Boycott, (4) Violation of the Donnelly Act, (5) Violation of the Uniform Deceptive Trade Practices Act, (6) Violation of the Illinois Antitrust Act, (7)

---

[6] These causes of action are: (1) Monopolization, (2) Exclusive Dealing, (3) Monopoly Leveraging, (3) Sham Litigation, (4) Patent Misuse, (5) Technology Tying, (6) Anticompetitive Product Redesign, (7) Attempted Monopolization, (8) Conspiracy to Monopolize, (9) Concerted Refusal to Deal & Group Boycott, (10) Violation of the Donnelly Act (NY State Law), (11) Violation of the Uniform Deceptive Trade Practices Act (IL State Law), (12) Violation of the Illinois Antitrust Act, (13) Violation of the Wisconsin Antitrust Act, (14) Common Law Unfair Competition under Wisconsin State Law and separately under (15 & 16) California State Common Law and Statutory Law, (17) Intentional Interference with business relations (NY State Law), (18) Tortious Interference with Contract (WI State Law), (19) Tortious Interference with prospective Business Expectancy (WI State Law), (20) Declaratory and Injunctive Relief under 15 USC §§ 1, 2 and 26, (21) Violation of the Vermont Consumer Protection Statute, (22) Violation of the MA Consumer Protection Statute, (23) Violation of the Massachusetts Unfair Sales Statute, (24) Unjust Enrichment (MA and VT State Laws), (25) Violation of the Lanham Act, and (26) Violation of the Cartwright Act (CA State Law).

Violation of the Wisconsin Antitrust Act, (8) Common Law Unfair Competition, (9) Intentional Interference with Business Relations, (10) Tortious Interference with Contract, (11) Tortious Interference with Prospective Business Expectancy, (12) Violation of the Lanham Act, or (13) Violation of the California Cartwright Act.  *Cf.* Complaints.

Indeed, if Rogers were to be centralized into this case, only one claim, Monopolization under 15 U.S.C. § 2, would be common amongst all plaintiffs.  These disparate legal theories, and related factual issues, will necessitate individualized discovery, which is antithetical to § 1407's goal of judicial economy through group-oriented pretrial procedures.  The Panel has ruled against centralization where such unique questions predominate over any common questions.  *In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying centralization and noting that even if the actions "share common legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact.").

For instance, the following questions of fact are at issue in Rogers' case and are irrelevant to all other actions at issue:

- Whether Rogers had legitimate business expectancy interests;
- To what extent Keurig's misrepresentations regarding Rogers's compatible portion packs interfered with its business expectancies;
- Whether that harm was a foreseeable result of Keurig's statements;
- Whether Keurig used a protected Rogers trademark or service mark;
- Whether such a use was coupled with a false or misleading description of fact in commercial advertising or promotion;
- False and disparaging assertions by Keurig, including in connection with the upcoming launch of its 2.0 brewer;
- Whether distributors would have purchased Rogers' OneCup portion packs, but for loyalty provisions in their Keurig Authorized Distributor agreements;

- Whether Keurig's prior patent infringement lawsuit against Rogers was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;

- Whether Keurig had a subjective intent to use governmental proceedings to interfere with Rogers' business; and

- Impact on and damages specific to Rogers for Keurig's tortious interference with a business expectancy, unfair competition, violation of the Sherman Act § 2, sham litigation and patent misuse.

Thus, discovery sought in Rogers' case will be quite different from discovery sought in any of the other cases. Given the number of plaintiff-specific questions, the panel should deny centralization. *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2010) ("[w]hile these [individual] actions may share some questions of fact with the putative class actions, they will focus to a large extent on individual issues of fact that are unique to each plaintiff's interactions with [defendant]."); *In re: HSBC Mortgage Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) (centralization was denied where "individualized discovery and legal issues were likely to be numerous and substantial"); *In re CVS Caremark Corp. Wage & Hour Employment Practices Litig.*, MDL 2134, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (noting "the potential for significant individual discovery tilts the balance against centralization" and denying a § 1407 motion to consolidate of seven individual and class action wage and hour lawsuits, involving "location specific" discovery and "procedural disparities among the constituent cases"); *In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d at 1363.

Movant Silverman concedes that material differences exist between the Class Actions and the TreeHouse Foods case, a competitor action that is pending in the Southern District of New York. In a letter to Judge Broderick of the Southern District of New York, Silverman writes that "class actions are particularly well-suited for consolidation because unification eliminates duplicative discovery, prevents inconsistent pretrial rulings and conserves the

resources of all parties involved." *See Ney Silverman Insurance Associates, LLC v. Keurig Green Mountain, Inc., et al*., Case No. 14-cv-01671 (April 3, 2014) [Dkt. No. 10 at 2]. Silverman's counsel distinguishes the Class Actions (all of which it seeks to consolidate) from the TreeHouse Foods competitor case, requesting that "the Class Actions … be consolidated and the Competitor Action [*i.e.*, the TreeHouse Foods case] … be coordinated with the Class Actions." *Id*. Thus, Movant must also acknowledge that there are substantial differences between the Class Actions and Rogers' case, which is a competitor case, such that consolidation of these cases is not even being sought by Silverman either here, or in the Southern District of New York.

Rogers and its competitor, TreeHouse Foods, each rely on significantly different legal theories and factual backgrounds in their cases against Keurig.  Although both plaintiffs allege sham litigation, the predicate cases are different.  *Cf.* TreeHouse Complaint ¶¶ 328-336; Rogers Complaint ¶¶ 147-156.  TreeHouse Foods has alleged conspiracy claims under the Sherman Act § 1, necessitating that its discovery focus on whether third parties have been complicit in Keurig's monopolistic endeavors, while Rogers' Sherman Act claims are brought under § 2, directed at Keurig's single actor conduct against other branded competitors and distributors.  *Cf.* TreeHouse Complaint Counts 2, 9 and 10 (¶¶315-322, 364-377); Rogers Complaint Claims 2 and 8 (¶¶ 134-140, 180-185).  All of TreeHouse' state law claims are based on Illinois, New York and Wisconsin non-federal law, while Rogers' are brought under California state law.  *Cf.* TreeHouse Complaint Counts 1-4 and 6-18 (¶¶ 308-336, 342-410); Rogers Complaint Claims 10-13 (¶¶ 191-207).  Moreover, Rogers' Claim against Keurig for violation of Cal. Bus. and Prof. Code §§ 17200 *et seq.* allow the Court to hold Keurig liable even if its conduct has not risen to the level of an antitrust violation but rather "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

The need to parse such disparate legal bases weighs against centralization.  *See In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (denying centralization where antitrust claims "encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state.").  Calculation of damages will also be unique as to Rogers and TreeHouse Foods.  *See In re: Moroccanoil Trademark Litig.*, 777 F. Supp. 2d 1340, 1341 (2011) (rejecting centralization where individualized questions included the extent of damages).

The facts before this Panel also differ markedly from those in the cases cited by Silverman in support of centralization.  The bulk of the cases cited only contemplated centralizing either class plaintiffs, or competitor plaintiffs, not both sets with one another.  *See In re UnumProvident Corp. Secs., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377  (J.P.M.L. 2003) (centralized securities and ERISA class actions with shareholder derivative suits);  *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565 (J.P.M.L. 1975) (centralized two antitrust actions filed by competitors against seven Japanese manufacturers of television receivers).  Indeed, almost all the cases cited by Silverman address only class actions.  *See In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (class actions centralized); *In re Prograf Antitrust Litig.*, 789 F. Supp. 2d 1380, 1380 (J.P.M.L. 2011) (same); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (same); *In re Roadway Express, Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) (same); *In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381 (J.P.M.L. 2010) (centralized class actions brought behalf of classes of direct and indirect purchasers and no party opposed centralization); *In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (centralized class actions and "[a]ll defendants and plaintiffs in 35 actions and potentially-related actions support the motion"); *In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008) (centralized class actions brought by dairy farmers and milk purchasers); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (centralized class actions and no party opposed centralization).

Finally, in *In re Intel Corp. Microprocessor Antitrust Litig*., 403 F. Supp. 2d 1356, 1357

(J.P.M.L. 2005), although one plaintiff was a competitor, all parties agreed to centralization and

the only issue was which court would serve as the transferee court.

> **2.      Formally Centralizing the Dissimilar Competitor Complaints Would Undermine Judicial Efficiency.**

The differences between the cases not only require individualized evidence and

discovery, but also would burden the transferee court with the need to parse differing state laws.

The Competitors will face the challenge of properly protecting their confidential business

information, which may be relevant as between them and Keurig, but would not be as to the

Class Action plaintiffs.  Finally, the parties would be needlessly burdened as a result of the

different procedural postures of the various cases.

Even if the legal and factual backgrounds were identical, centralizing co-plaintiff

competitors Rogers and TreeHouse would still introduce inefficiencies.  Both companies have

sensitive proprietary information (*e.g.*, customer lists and contacts) that may have to be shared

with counsel for Keurig to show their individual harm, but would not need to be shared between

the Class Actions.  These disparate competitor interests weigh heavily against centralization.  *See*

*In re: Spray Polyurethane Foam Insulation Products Liab. Litig*., 949 F. Supp. 2d at 1364

(denying centralization, noting "placing direct competitor manufacturer defendants into the same

litigation would require protecting trade secret and confidential information from disclosure to

all parties and complicate case management"); *In re: Prescription Drug Co-Pay Subsidy*

*Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.M.P.L. 2012) ("[p]lacing multiple different

defendants, many of whom are competitors, into the same action will inject additional and

unnecessary complexity into this already complex litigation.").

Rogers will file shortly a motion for a preliminary injunction and associated motion to

expedite discovery seeking to arrest Keurig's ongoing illegal conduct that is currently causing

irreparable harm to Rogers' OneCup business.  Thus, Rogers would be unduly prejudiced if it

were unable to promptly conduct initial discovery on its impending motion for a preliminary

injunction.  By contrast, the Class Action plaintiffs will be initially focused on certifying the class and appointing a lead plaintiff.  These issues are subjectively irrelevant to Rogers and would prejudice Rogers by delaying its unique claims against Keurig.  These varying procedural postures of the parties render centralization or transfer inappropriate.  *See In re: Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 1372, 1372 (J.P.M.L. 2013) (denying centralization where respondent noted "that voluntary coordination by the parties is more appropriate in light of the low number of actions, factual differences in the actions, and the procedural posture of two preliminary injunctions against defendant"); *In re CVS Caremark Corp.*, 684 F. Supp. 2d at 1379.  Moreover, whereas the Class Action plaintiffs can be made whole by monetary damages, further delay in Rogers' case would irreparably harm Rogers' business.  *See In re Light Cigarettes Mktg. & Sales Practices*, 652 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2009) (case seeking equitable relief not included in centralized proceeding where other cases sought monetary damages).

### 3.    The Eastern District of California is Perfectly Situated to Adjudicate Rogers' Action.

Rather than centralizing Rogers' action on the East Coast, it should remain in the Eastern District of California.  Rogers is headquartered in the Eastern District of California and, as a result, much of the evidence supporting Rogers' claims, including its books and records, is located in this district.  For example, Rogers' employees will testify about the specific loss of business and goodwill that Keurig's conduct has caused Rogers, the safety and reliability of its OneCup packs (which are manufactured in the Eastern District of California), and the cost and burdens incurred by Rogers in defending against Keurig's baseless patent infringement case.  These witnesses are expected to include Jon Rogers, President of Rogers, Peter Rogers, Chief Operating Officer of Rogers, and Rogers employee Warren Yamauchi.  All are located in the Eastern District of California.  Thus, the Eastern District of California is central to the pretrial activities in Rogers' case, yet none of this evidence applies to the other cases.

Other witnesses key to Rogers' case are located on the West Coast.  Much of the discovery and proof will focus on the pressure that Keurig placed on distributors of compatible portion packs to drop unlicensed products or otherwise favor Keurig over its competitors.  The largest such distributors are Amazon.com and Costco Wholesale Corporation ("Costco"), whose headquarters and primary distributor contacts are on the West Coast.  Additionally Costco distributes Rogers' compatible single-serve portion packs only on the West Coast.  Thus, the concentration of third party witnesses on the West Coast strongly weighs in favor of maintaining Rogers' case in the Eastern District of California and against transfer.

Judge Kimberley Mueller in the Eastern District of California is ideally suited to preside over Rogers' case.  She has over a decade of experience on the bench, serving as both a magistrate and Article III judge.[7]  During that time, California state law unfair competition claims have been a regular feature of her docket; this year alone, she has issued at least 5 opinions dealing with unfair competition claims under Cal. Bus. & Prof. Code §§ 17200 *et. seq.*[8]  She is also experienced with antitrust cases, and is currently overseeing *Irving v. Lennar Corp.* No. 2:08–cv–3017 KJM EFB, a case dealing with antitrust allegations of tying, as well as California Cartwright act claims under Cal. Bus & Prof Code §§ 16720 *et seq.  See, e.g., Irving v. Lennar Corp.*, CIV S-12-290 KJM EFB, 2013 WL 1308712 (E.D. Cal. Apr. 1, 2013).  Earlier this year, she oversaw a settlement in another antitrust case, *Four in One Co., Inc. v. S.K. Foods, L.P.  See Four In One Co., Inc. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014).  Given Judge Mueller's experience, Rogers' case is already ideally

---

[7] *See* Judge Information, *avail. at*: http://www.caed.uscourts.gov/caed/staticother/page_1563.htm (last visited April 3, 2014).

[8] *See Quigley v. Am. Claims Servs., Inc.*, 2:13-CV-01766-KJM, 2014 WL 258844 (E.D. Cal. Jan. 23, 2014); *Ash v. Bank of Am. N.A.*, 2:10-CV-02821-KJM, 2014 WL 301027 (E.D. Cal. Jan. 28, 2014); *Cole v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 2:14-CV-00078-KJM, 2014 WL 352505 (E.D. Cal. Jan. 30, 2014); *Miller v. AmeriGas Partners, L.P.*, CIV. 12-2974 KJM AC, 2014 WL 1096705 (E.D. Cal. Mar. 19, 2014); *Lanini v. JPMorgan Chase Bank*, 2:13-CV-00027 KJM, 2014 WL 1347365 (E.D. Cal. Apr. 4, 2014).

situated to justly and efficiently resolve its particular state law claims, as well as its federal claims, and a change in venue would be inefficient.

**B.      Voluntary Coordination of Discovery Among the Parties Is Preferable to Centralization Under 28 U.S.C. § 1407.**

Rather than centralize this case under § 1407, the Panel should allow Rogers, TreeHouse Foods, the Class Action plaintiffs, and Keurig to informally coordinate discovery.  With the Class Actions centralized in the Southern District of New York, Rogers' Action, the TreeHouse Action and the Class Actions would encompass only two judicial districts and could be easily coordinated with informal discovery.  *See, e.g., In re: Fresh Dairy Products Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (J.P.M.L. 2012) ("Given the limited number of actions, we believe that informal cooperation among the involved attorneys is quite practicable"); *In re: Diversified Lending Grp., Inc., Sec. Litig.*, 732 F. Supp. 2d at 1379; *In re: Aftermarket Auto. Sheet Metal Parts Antitrust Litig.*, 657 F. Supp. 2d 1377, 1377 (J.P.M.L. 2009) ("Given the limited number of districts and parties involved in this litigation, cooperation among the counsel can minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings.").

Judge Mueller in the Eastern District of California can easily coordinate with the other cases and defer as appropriate to avoid duplicative discovery and inconsistent rulings without transferring Rogers' case.  As noted above, she is also experienced with complex antitrust cases.  *See Four in One Co., Inc.*, 2014 WL 28808.  Thus, rather than temporarily centralizing all the captioned cases for pretrial matters under § 1407, judicial efficiency would be better served by permitting Rogers to participate in coordinated discovery without transfer or centralization.

Plaintiff Rogers stands ready to coordinate discovery with the other parties as appropriate and to the extent such discovery would create efficiencies.  Rogers is willing to make relevant discovery in its case available for use in all the cases, subject to the implementation of a suitable protective order which provides appropriate confidentiality protection.  *See In re: Spray Polyurethane Foam Insulation Products Liab. Litig.*, 949 F. Supp. 2d at 1364.  For example, Rogers is willing to cross-notice depositions and share produced documents and written

18

discovery across all the cases.  In addition, Rogers is willing to participate in a joint repository of document productions.  *See Manual for Complex Litigation*, § 20.14 (2004).  Such coordination is readily achievable.

## V.      <u>CONCLUSION</u>

For the foregoing reasons Rogers respectfully requests that the Panel deny Silverman's Motion to Transfer Rogers' case from the Eastern District of California.  While Rogers stands ready to coordinate discovery with the other cases against Keurig, transfer of Rogers' case is unwarranted and Silverman's Motion should be denied with respect to Rogers.

MORGAN, LEWIS & BOCKIUS LLP

Dated:  April 10, 2014

By     /s/ Daniel Johnson, Jr.
      Daniel Johnson, Jr. (State Bar No. 57409)
      Kent M. Roger (State Bar No. 95987)
      One Market, Spear Street Tower
      San Francisco, CA  94105
      Tel:  (415) 442-1000
      Fax:  (415) 442-1001

      *Attorneys for JBR, Inc. (d/b/a Rogers Family Company)*