## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | MDL No. 2542 |

## MOTION AND MEMORANDUM OF LAW OF DEFENDANT KEURIG GREEN MOUNTAIN, INC. IN RESPONSE TO THE MOTION OF PLAINTIFF NEY SILVERMAN INSURANCE ASSOCIATES, LLC FOR THE TRANSFER OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK FOR COORDINATED OR CONSOLIDATED PRETRIAL PROOCEEDINGS PURSUANT TO 28 U.S.C. § 1407

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND BACKGROUND ................................................................ 1

ARGUMENT .............................................................................................................. 2

    I.    Transfer of the Related Actions for Coordinated or Consolidated Pretrial Proceedings Is Appropriate ...................................................... 2

        A.    The Related Actions Share the Same Underlying Core of Factual Allegations ......................................................................... 2

        B.    Common Questions of Fact Mean Consolidation is Appropriate, Regardless of Differences Among the Complaints ............................. 3

        C.    Centralization of the Related Actions Will Advance the Just and Efficient Conduct of the Litigation ........................................... 7

    II.    The Appropriate Forum ..................................................................... 8

        A.    The Southern District of California Has The Capacity to Handle This MDL ..................................................................................... 8

        B.    Judge Sabraw's Docket Could Accommodate an MDL ......................... 10

        C.    The Southern District of California is an Accessible, Metropolitan Venue ............................................................................... 11

        D.    In the Alternative, the Southern District of New York Is a Suitable Forum ........................................................................... 12

CONCLUSION .......................................................................................................... 13

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re 7-Eleven Franchise Antitrust Litigation,*
358 F. Supp. 286 (J.P.M.L. 1973) ............................................................... 7

*In re Aimster Copyright Litigation,*
177 F. Supp. 2d 1380 (J.P.M.L. 2001) ....................................................... 11

*In re American General Life & Accident Insurance Co. Retiree Benefits "ERISA"
Litigation,* 387 F. Supp. 2d 1361 (J.P.M.L. 2005) .................................... 11

*In re Avaulta Pelvic Support System Products Liability Litigation,*
746 F. Supp. 2d 1362 (J.P.M.L. 2010) ......................................................... 8

*In re Bank of America Home Affordable Modification Program (HAMP) Contract
Litigation,* 746 F. Supp. 2d 1359 (J.P.M.L. 2010) ..................................... 5

*In re Bayer Corp. Combination Aspirin Products Marketing & Sales Practices Litigation,*
609 F. Supp. 2d 1379 (J.P.M.L. 2009) ....................................................... 10

*In re Brand Name Prescription Drugs Antitrust Litigation,*
No. 94 C 897, 1994 WL 240537 (N.D. Ill. May 27, 1994) ........................... 4

*In re Celotext Corp. 'Technifoam' Products Liability Litigation,*
68 F.R.D. 502 (J.P.M.L. 1975) ..................................................................... 8

*In re Cobra Tax Shelters Litigation,*
408 F. Supp. 2d 1348 (J.P.M.L. 2005) ......................................................... 7

*In re Commercial Money Center, Inc., Equipment Lease Litigation,*
229 F. Supp. 2d 1379 (J.P.M.L. 2002) ....................................................... 10

*In re Compression Labs, Inc., Patent Litigation,*
360 F. Supp. 2d 1367 (J.P.M.L. 2005) ....................................................... 11

*In re Countrywide Financial Corp. Mortgage Marketing & Sales Practices Litigation,*
MDL No. 1988 (J.P.M.L. 2008) ................................................................. 10

*In re Cox Enterprises, Inc., Set-Top Cable Television Box Antitrust Litigation,*
626 F. Supp. 2d 1343 (J.P.M.L. 2009) ......................................................... 2

*In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation,*
626 F. Supp. 2d 1348 (J.P.M.L. 2009) ......................................................... 2

*In re Denture Cream Products Liability Litigation,*
  624 F. Supp. 2d 1379 (J.P.M.L. 2009)..................................................................13

*In re Digitek Products Liability Litigation,*
  571 F. Supp. 2d 1376 (J.P.M.L. 2008)..............................................................9, 11

*In re Educational Testing Service PLT 7-12 Test Scoring Litigation,*
  350 F. Supp. 2d 1363 (J.P.M.L. 2004)................................................................11

*In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practices Litigation,*
  844 F. Supp. 2d 1380 (J.P.M.L. 2012)..................................................................9

*In re Indianapolis Life Insurance Co. I.R.S. § 412(I) Plans Life Insurance Marketing
  Litigation,* 581 F. Supp. 2d 1364, 1366 (J.P.M.L. 2008)........................................11

*In re Jamster Marketing Litigation,*
  427 F. Supp. 2d 1366 (J.P.M.L. 2006)................................................................12

*In re Light Cigarettes Marketing & Sales Practices Litigation,*
  652 F. Supp. 2d 1379 (J.P.M. L.2009)..................................................................5

*In re Lipitor Antitrust Litigation,*
  MDL No. 2332, 2012 WL 4069565 (J.P.M.L. Aug. 3, 2012) ..................................4

*In re Loestrin 24 Fe Antitrust Litigation,*
  MDL No. 2472, 2013 WL 5505369 (J.P.M.L. Oct. 2, 2013) ..................................4

*In re M3Power Razor System Marketing & Sales Practices Litigation,*
  398 F. Supp. 2d 1363 (J.P.M.L. 2005)..................................................................8

*In re Medical Waste Services Antitrust Litigation,*
  277 F. Supp. 2d 1382 (J.P.M.L. 2003)..................................................................4

*In re Mutual Fund Sales Antitrust Litigation,*
  361 F. Supp. 638 (J.P.M.L. 1973)........................................................................7

*In re NuvaRing Products Liability Litigation,*
  572 F. Supp. 2d 1382 (J.P.M.L. 2008)..................................................................8

*In re Oxycontin Antitrust Litigation,*
  314 F. Supp. 2d 1388 (J.P.M.L. 2004)..................................................................7

*In re Oxycontin Antitrust Litigation,*
  542 F. Supp. 2d 1359 (J.P.M.L. 2008)..................................................................6

*In re Pineapple Antitrust Litigation,*
  342 F. Supp. 2d 1348 (J.P.M.L. 2004)..............................................................4, 6

*In re Polyurethane Foam Antitrust Litigation*,
  MDL No. 2196, 2011 WL 3182411 (J.P.M.L. May 19, 2011)..................................................4

*In re Serzone Products Liability Litigation*,
  217 F. Supp. 2d 1372 (J.P.M.L. 2002)....................................................................................10

*In re Skelaxin (Metaxalone) Antitrust Litigation*,
  856 F. Supp. 2d 1350 (J.P.M.L. 2012)......................................................................................4

*In re Trasylol Products Liability Litigation*,
  545 F. Supp. 2d 1357 (J.P.M.L. 2008)......................................................................................9

*Schueneman v. Arena Pharmaceuticals, Inc.*,
  No. 10 Civ. 2335 (BTM) (BLM), 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)......................4

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*,
  No. 04-cv-1136-DMS-BLM, 2006 WL 6667002 (S.D. Cal. Jan. 5, 2006), *aff'd sub*
  *nom. Wuxi Multimedia Ltd. v. Koninklijke Philips Electronics, N.A.*, 280 F. App'x
  968 (Fed. Cir. 2008)...............................................................................................................10

STATUTES

28 U.S.C. § 1407.............................................................................................................................2

## INTRODUCTION AND BACKGROUND

Defendant Keurig Green Mountain, Inc. ("Keurig")[1] submits this brief in response to the motion filed by Plaintiff Ney Silverman Insurance Associates, LLC ("Ney Silverman") to transfer to a single judicial district for coordinated or consolidated pre-trial proceedings eight substantially similar antitrust complaints filed against Keurig in several judicial districts.[2] Keurig supports transfer and coordination or consolidation of these eight actions along with additional related actions filed after Ney Silverman's motion (collectively, the "Related Actions").[3]  The Related Actions present a classic case for coordinated or consolidated pretrial proceedings.  The complaints make the same factual allegations regarding Keurig's business conduct and innovation and raise the same basic legal theories, often using verbatim language. Transfer of these cases will further the convenience of parties and witnesses, promote the just and efficient conduct of the actions, and eliminate the possibility of overlapping or inconsistent pretrial rulings.

---

[1]  On March 10, 2014, Green Mountain Coffee Roasters, Inc. changed its name to Keurig Green Mountain, Inc.  Keurig Green Mountain, Inc. is also successor to Keurig, Incorporated.

[2]  The eight cases identified in Ney Silverman's motion are *Ney Silverman Insurance Associates, LLC v. Keurig Green Mountain, Inc.*, No. 1:14-cv-01671-VSB (S.D.N.Y. Mar. 11, 2014); *Hoyer v. Green Mountain Coffee Roasters, Inc.*, No. 1:14-cv-01609-VSB (S.D.N.Y. Mar. 10, 2014); *Rocker v. Green Mountain Keurig, Inc.*, No. 1:14-cv-01716-VSB (S.D.N.Y. Mar. 12, 2014); *Constantino v. Keurig Green Mountain, Inc.*, No. 1:14-cv-01836-VSB (S.D.N.Y. Mar. 17, 2014); *Major v. Keurig Green Mountain, Inc.*, No. 1:14- cv-00348-SLR (D. Del. Mar. 19, 2014); *Rizzo v. Keurig Green Mountain, Inc.*, No. 1:14-cv-11030-RWZ (D. Mass. Mar. 19, 2014); *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 14-cv-00905-VSB (S.D.N.Y. Feb. 11, 2014); and *JBR, Inc. v. Keurig Green Mountain, Inc.*, No. 2:14-cv-00677-KJM-CKD (E.D. Cal. Mar. 13, 2014).

[3]  The seven cases filed after Ney Silverman's motion are *Cusimano Carstar Collison, Inc. v. Keurig Green Mountain, Inc.*, No. 1:14-cv-01963-VSB (S.D.N.Y. Mar. 20, 2014); *Schroeder v. Keurig Green Mountain, Inc.*, No. 3:14-cv-00678-DMS-KSC (S.D. Cal. Mar. 24, 2014); *Gray v. Keurig Green Mountain, Inc.*, No. 3:14-cv-00696-DMS-KSC (S.D. Cal. Mar. 26, 2014); *Rosenthal v. Keurig Green Mountain, Inc.*, No. 1:14-cv-02219-VSB (S.D.N.Y. Mar. 28, 2014); *Rosen v. Keurig Green Mountain, Inc.*, No. 1:14-cv-02255-VSB (S.D.N.Y. Apr. 1, 2014); *Springer v. Keurig Green Mountain, Inc.*, No. 1:14-cv-02267-VSB (S.D.N.Y. Apr. 1, 2014); and *Overton v. Keurig Green Mountain, Inc.*, No. 1:14-cv-02530-UA (S.D.N.Y. Apr. 9, 2014).

1

Keurig respectfully submits that the Related Actions should be transferred to Judge Dana Sabraw in the Southern District of California or, in the alternative, to Judge Vernon Broderick in the Southern District of New York.

## ARGUMENT

### I.   Transfer of the Related Actions for Coordinated or Consolidated Pretrial Proceedings Is Appropriate

The purpose of the Multidistrict Litigation ("MDL") process is to "promote the just and efficient conduct" of multiple civil cases involving common issues of fact.  28 U.S.C. § 1407.  The Related Actions involve common issues of fact and their transfer will promote an effective and efficient use of resources.

#### A.  The Related Actions Share the Same Underlying Core of Factual Allegations

The Judicial Panel on Multidistrict Litigation ("Panel") has routinely transferred antitrust cases that are based on the same underlying facts.  *See, e.g., In re Cox Enters., Inc., Set-Top Cable Television Box Antitrust Litig.*, 626 F. Supp. 2d 1343 (J.P.M.L. 2009); *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009).  Here, the Related Actions challenge the same aspects of Keurig's business conduct related to its invention, development and popularization of single-serve coffee brewers and coffee packs used in those brewers.  In particular, plaintiffs challenge Keurig's sourcing and distribution agreements, as well as its announced plans to introduce a new brewer, "Keurig 2.0,"[4] later this year.  All fifteen pending complaints assert claims of monopolization, and eleven of the fifteen  include claims of attempted monopolization.[5]  All allege that Keurig entered into a "web" of exclusive dealing

---

[4]  Keurig 2.0 will allow users to brew a either a single cup or a multi-cup carafe of coffee using an innovative automated system that allows the brewer to identify the inserted pack and brew it optimally with the push of a button.

[5]  *See TreeHouse* Compl. ¶¶ 308-14, 358-63; *Hoyer* Compl. ¶¶ 229-34, 267-71; *Ney Silverman* Compl. ¶¶ 197-204, 220-24; *Rocker* Compl. ¶¶ 88-95; *JBR, Inc.* Compl. ¶¶ 126-33, 180-85;

2

agreements to foreclose competition.[6]  All allege that Keurig's planned launch of Keurig 2.0

would violate the antitrust laws.[7]  And all allege relevant markets for (1) the design,

manufacture, and sale of single-serve brewers and (2) the design, manufacture, and sale of

single-serve containers of coffee or other beverages that can be used in Keurig's brewers.[8]

### B. Common Questions of Fact Mean Consolidation is Appropriate, Regardless of Differences Among the Complaints

The fact that the plaintiffs in the Related Actions include purported direct and indirect

purchaser class plaintiffs as well as individual competitor plaintiffs does not weigh against

consolidation.  To the contrary, the Panel routinely centralizes antitrust cases even where there

are differences among plaintiffs.

---

*Constantino* Compl. ¶¶ 205-12; *Major* Compl. ¶¶ 85-92; *Rizzo* Compl. ¶¶ 243-48, 281-85; *Cusimano Carstar* Compl. ¶¶ 198-205, 221-25; *Schroeder* Compl. ¶¶ 217-22, 257-62; *Gray* Compl. ¶¶ 217-22, 257-62; *Rosenthal* Compl. ¶¶ 87-94; *Rosen* Compl. ¶¶ 115-23, 140-45; *Springer* Compl. ¶¶ 197-204, 220-24; *Overton* Compl. ¶¶ 112-21.
[6]  *See TreeHouse* Compl. ¶¶ 14, 117, 172-74, 211, 319; *Hoyer* Compl. ¶¶ 15, 105, 128-29, 146, 239; *Ney Silverman* Compl. ¶¶ 96, 209; *Rocker* Compl. ¶ 91; *JBR, Inc.* Compl. ¶ 138; *Constantino* Compl. ¶¶ 197-204, 220-24; *Major* Compl. ¶ 88; *Rizzo* Compl. ¶¶ 15, 111, 137-38, 155, 253; *Cusimano Carstar* Compl. ¶¶ 97, 210; *Schroeder* Compl. ¶¶ 15, 113, 146-47, 227; *Gray* Compl. ¶¶ 15, 113, 146-47, 227; *Rosenthal* Compl. ¶ 90; *Rosen* Compl. ¶¶ 124-32; *Springer* Compl. ¶¶ 96, 209; *Overton* Compl. ¶¶ 20, 29, 41, 81.
[7]  *See TreeHouse* Compl. ¶¶ 237-76, 311, 326, 342-57; *Hoyer* Compl. ¶¶ 171-97, 232, 247, 250-66; *Ney Silverman* Compl. ¶¶ 143-77, 200, 217; *Rocker* Compl. ¶¶ 80-85, 91; *JBR, Inc.* Compl. ¶¶ 84-112, 129, 144, 163-79; *Constantino* Compl. ¶¶ 143-76, 200, 217; *Major* Compl. ¶¶ 77-82, 88; *Rizzo* Compl. ¶¶ 184-214, 246, 261, 264-80; *Cusimano Carstar* Compl. ¶¶ 144-78, 201, 218; *Schroeder* Compl. ¶¶ 177-201, 220, 235, 239-56; *Gray* Compl. ¶¶ 177-201, 220, 235, 239-56; *Rosenthal* Compl. ¶¶ 79-84, 90; *Rosen* Compl. ¶¶ 100-08, 118, 136; *Springer* Compl. ¶¶ 143-77, 200, 217; *Overton* Compl. ¶¶ 6, 35, 59-63, 67-71, 88, 119.
[8]  *See TreeHouse* Compl. ¶¶ 46-71, 87-106; *Hoyer* Compl. ¶¶ 39-63, 78-94; *Ney Silverman* Compl. ¶¶ 23-43, 59-74; *Rocker* Compl. ¶¶ 36-52; *JBR, Inc.* Compl. ¶¶ 12-22, 30-41; *Constantino* Compl. ¶¶ 23-43, 59-74; *Major* Compl. ¶¶ 33-49; *Rizzo* Compl. ¶¶ 44-68, 83-99; *Cusimano Carstar* Compl. ¶¶ 24-44, 60-75; *Schroeder* Compl. ¶¶ 48-68, 83-102; *Gray* Compl. ¶¶ 48-68, 83-102; *Rosenthal* Compl. ¶¶ 36-51; *Rosen* Compl. ¶¶ 32-60; *Springer* Compl. ¶¶ 23-43, 59-74; *Overton* Compl. ¶¶ 72-94.  Eleven of the fifteen also allege a relevant market for the design, manufacture, and sale of single-serve containers of coffee or other beverages used in single-serve brewers. *See TreeHouse* Compl. ¶¶ 72-86; *Hoyer* Compl. ¶¶ 64-77; *Ney Silverman* Compl. ¶¶ 44-58; *JBR, Inc.* Compl. ¶¶ 23-29; *Constantino* Compl. ¶¶ 44-58; *Rizzo* Compl. ¶¶ 69-82; *Cusimano Carstar* Compl. ¶¶ 45-59; *Schroeder* Compl. ¶¶ 69-82; *Gray* Compl. ¶¶ 69-82; *Springer* Compl. ¶¶ 44-58; *Overton* Compl. ¶¶ 72, 82-87.

For example, the Panel frequently centralizes "antitrust cases involving direct and indirect purchaser claims that arise from common factual allegations, particularly where multiple related actions are pending."  *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012); *see also In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004); *In re Loestrin 24 Fe Antitrust Litig.*, MDL No. 2472, 2013 WL 5505369, at *1 (J.P.M.L. Oct. 2, 2013).

Similarly, "[t]he Panel . . . typically includes both individual actions and putative class actions in the same multidistrict proceeding."  *In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011).  *See also In re Lipitor Antitrust Litig.*, MDL No. 2332, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012) ( "[I]t is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core") (internal citations omitted).  While individual plaintiffs sometimes resist transfer and argue that coordination with class claims "will somehow retard the pace at which [the individual plaintiff's] claims are litigated," the Panel has rejected this line of argument and directed individual plaintiffs simply to raise timing issues with the transferee judge.  *In re Med. Waste Servs. Antitrust Litig.*, 277 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003).

Among other things, the transferee judge can determine whether the transferred individual cases should be fully consolidated with the individual actions or merely coordinated for pre-trial purposes.  *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1994 WL 240537, at *1 (N.D. Ill. May 27, 1994) (noting that the eleven antitrust actions pending before the court fell "into two somewhat distinct groups: (1) a 'Consolidated [Class] Action,' and (2) 'Coordinated, Individual Actions'").; *cf. Schueneman v. Arena Pharm., Inc.*, No.

10 Civ. 2335 (BTM) (BLM), 2011 WL 3475380, at *2 (S.D. Cal. Aug. 8, 2011) (outside the MDL context, denying defendants' motion to *consolidate* an individual action with class actions but "order[ing] the Magistrate Judge to coordinate discovery…briefing schedules and other case management dates" in order to avoid inefficiency of the sort that might otherwise arise *even with cases that were already all pending before a single judge*).

The Panel very rarely declines to transfer individual actions and does so only in unusual circumstances not found here.  For instance, in one case the Panel declined to transfer individual actions where *none of the parties* to the actions supported consolidation.  *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2010) ("[a]t oral argument, no responding party argued in favor of including the individual actions in centralized proceedings").  This is consistent with the Panel's general practice of declining transfer only under unusual circumstances.  These unusual circumstances are well-exemplified by one recent case involving only class actions, where the Panel declined to transfer three actions for several reasons, including the fact that each of the three cases at issue was "at a relatively advanced stage"—one had been pending for 10 years and another was past the discovery stage and had failed on class certification—and the fact that they "differ[ed] in significant ways" from the centralized cases, including class definition, named defendants, claims asserted, *and* relief sought.  *In re Light Cigarettes Mktg. & Sales Practices Litig.*, 652 F. Supp. 2d 1379, 1380-1381 (J.P.M.L.2009).

Here, there is no question that the individual plaintiffs' claims arise from the same factual core as the purported class plaintiffs' claims.  In fact, a number of the purported class complaints appear to be copied directly from and refer to the first filed individual case, *TreeHouse Foods,*

*Inc. v. Green Mountain Coffee Roasters*, No. 1:14-cv-00905-VSB (S.D.N.Y. Feb. 11, 2014).[9]

These cases are at the same very early stage of litigation—each was filed within the last two

months—raise the same claims and seek substantially the same relief, including injunctive relief

and damages.  *See TreeHouse* Compl. Prayer for Relief ¶¶ H-K (individual action seeking treble

damages and injunctive relief); *JBR, Inc.* Compl. Prayer for Relief ¶¶ C, E (individual action

seeking treble damages and injunctive relief); *Hoyer* Compl. Prayer for Relief ¶¶ F-I (purported

class action seeking treble damages and injunctive relief).[10]

Finally, the fact that some plaintiffs have raised various state law claims does not bar

transfer.[11]  Section 1407 provides for transfer of actions where they share "common questions of

fact," regardless of whether additional causes of actions are asserted in any of the complaints,

and it is indeed common to consolidate antitrust cases involving ancillary state law claims.  *See,*

*e.g., In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d at 1349 (centralizing nine antitrust actions

pending in three states notwithstanding the fact that "[c]ertain of the constituent actions also

allege that defendants' conduct violated other statutory and common law proscriptions of various

states"); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008)

---

[9]   *See, e.g.*, *Hoyer* Compl. ¶¶ 6, 57, 60, 72, 100-03, 107, 130-36, 140-42, 149, 164, 176-77, 188-89; *Ney Silverman* Compl. ¶¶ 97-115; *Constantino* Compl. ¶¶ 95-116; *Rizzo* Compl. ¶¶ 6, 62, 65, 77, 105, 108, 139-45, 153, 149-51, 173, 189-90, 203-04; *Cusimano Carstar* Compl. ¶¶ 98-116; *Schroeder* Compl. ¶¶ 63, 184, 188, 205; *Gray* Compl. ¶¶ 63, 184, 188, 205; *Springer* Compl. ¶¶ 97-115.

[10]   *See also Ney Silverman* Compl. ¶¶ 225(d)-(e) (purported class action seeking treble damages and injunctive relief); *Rizzo* Compl. Prayer for Relief ¶¶ F-I (same); *Cusimano Carstar* Compl. ¶¶ 226(d)-(e) (same); *Schroeder* Compl. Prayer for Relief ¶¶ C, E (same); *Gray* Compl. Prayer for Relief ¶¶ C, E (same); *Springer* Compl. ¶¶ 225(d)-(e) (same); *Overton* Compl. Prayer for Relief ¶¶ B-C (same).

[11]   *See, e.g.*, *TreeHouse* Compl. ¶¶ 308-36, 342-410 (claims under laws of New York, Wisconsin, and Illinois); *Hoyer* Compl. ¶¶ 280-93 (claims under laws of Vermont and Massachusetts); *JBR, Inc.* Compl. ¶¶ 191-92, 195-202 (claims under laws of California); *Rizzo* Compl. ¶¶ 294-307 (claims under laws of Vermont and Massachusetts); *Schroeder* Compl. ¶¶ 272-86 (claims under laws of California); *Gray* Compl. ¶¶ 272-86 (claims under laws of California); *Rosenthal* Compl. ¶¶ 95-149 (claims under laws of several states).

(centralizing actions that pled "claims under state statutory and common law" with actions that

pled antitrust claims because "Section 1407 does not require a complete identity of common

factual issues").

### C.  Centralization of the Related Actions Will Advance the Just and Efficient Conduct of the Litigation

*First*, transfer will eliminate the possibility of overlapping or inconsistent pretrial rulings,

which is "an important factor favoring transfer of an action under Section 1407." *In re 7-Eleven*

*Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973); *see also In re Cobra Tax*

*Shelters Litig.*, 408 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005) (holding that centralization was

necessary where it would, among other things, prevent inconsistent pretrial rulings); *In re Mut.*

*Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973) (holding that centralization is

appropriate when it will eliminate the potential for inconsistent pretrial rulings on common

questions of law).

At present, the Related Actions are pending in five different federal district courts.  If

even some of the actions proceed in parallel in different districts, there is a real risk of

inconsistent rulings on any number of issues, including each of the various grounds on which

Keurig will move to dismiss.  Consolidation is necessary to eliminate this risk.  *See In re*

*Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) ("Centralization under

Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings").

*Second*, if any of the claims survive a motion to dismiss – and no briefing schedule for a

motion to dismiss has yet been set in any of the Related Actions – transfer to a single court will

ensure that discovery is conducted in the most efficient manner possible.  The Panel has often

noted the efficiency involved in placing related actions "before a single judge who can structure

pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that

7

the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re M3Power Razor Sys. Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1363, 1365 (J.P.M.L. 2005). *See also In re Avaulta Pelvic Support Sys. Prods. Liab. Litig.*, 746 F. Supp. 2d 1362, 1364 (J.P.M.L. 2010) (transfer ensures that discovery "will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties"); *In re Celotext Corp. 'Technifoam' Prods. Liab. Litig.*, 68 F.R.D. 502, 504 (J.P.M.L. 1975) (granting transfer motion will "ensure that discovery will transpire but once").

Alternatives to transfer, such as informal coordination among several judges located in different districts throughout the country, simply would not accomplish the same objectives. As the Panel has recognized, only transfer can truly streamline all pretrial proceedings. *See In re NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008).

## II.    The Appropriate Forum

Either the Southern District of California or, in the alternative, the Southern District of New York, would be an appropriate forum for this case.

### A.  The Southern District of California Has The Capacity to Handle This MDL

The Southern District of California has the least crowded MDL docket of any of the courts where the Related Actions are pending, excluding the extremely crowded Eastern District of California, which has the third-highest number of pending cases per judgeship of any district in the country.[12]  The Panel has frequently noted that the most appropriate forum is the district

---

[12] While the Eastern District of California does not have any MDLs pending currently, its 1,356 pending cases per judgeship is more than double the national average of 594 pending cases per judgeship.  *See* Administrative Office of the U.S. Courts, *Federal Court Management Statistics, District Courts*, (Dec. 2013) http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourt ManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=69.

with the least crowded MDL docket.  *See, e.g.*, *In re Digitek Prods. Liab. Litig.*, 571 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("With the increasing number of MDLs, it becomes helpful to spread the burden of them among districts, where we can do so and still retain the benefits of convenience which Section 1407 centralization requires."); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (transferring to a district that is "presiding over fewer MDL dockets than other proposed districts"); *In re Trasylol Prods. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (noting that "[f]or this litigation that is nationwide in scope, the parties have proposed several forums, any number of which could suitably serve as the transferee district" and transferring to a district that "currently has a relatively low number of MDL dockets and offers an accessible metropolitan location").  Not only does the Southern District of California have only 0.6 MDL cases per authorized judgeship[13] it also has among the lowest number of overall pending cases per judgeship of any of the districts where the Related Actions were filed.[14]  By way of comparison, with 41 pending MDL proceedings and 28 authorized judgeships, the Southern District of New York has roughly 1.5 MDL cases per authorized judgeship.[15]  The Southern District of New York also has 50% more cases per judgeship than does the Southern District of

---

[13] *See* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets*, (Mar. 13, 2014) http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-13-2014.pdf; Administrative Office of the U.S. Courts, *supra* note 12.

[14] *See* Administrative Office of the U.S. Courts, *supra* note 12 (noting 460 pending cases per judgeship in S.D. Cal. compared with a national average of 594).  Of the districts where the Related Actions are pending, only the District of Massachusetts has a lower number of pending cases per judgeship.  *See id.* (noting 366 pending cases per judgeship in D. Mass.).

[15] The District of Delaware and District of Massachusetts each have 1 MDL per judgeship.  *See id.* (4 MDLs and 4 judgeships for D. Del.; 13 MDLs and 13 judgeships for D. Mass.).

California.[16]  Transferring the Related Actions to the Southern District of California would place additional cases in a district that has the capacity to handle them.  *See In re Serzone Prods. Liab. Litig.*, 217 F. Supp. 2d 1372, 1374 (J.P.M.L. 2002) (assignment of MDL to "a transferee district that is not currently overtaxed with other multidistrict dockets and to a transferee judge who can steer this litigation on a steady and expeditious course").  Transfer to the Southern District of California would promote judicial efficiency on a nationwide scale, because it would appropriately allocate limited judicial resources.

### B.  Judge Sabraw's Docket Could Accommodate an MDL

Judge Sabraw, to whom the actions currently pending in the Southern District of California are assigned, would be a logical choice to oversee the proposed MDL.  Judge Sabraw has experience handling MDL cases, *see In re Countrywide Financial Corp. Mortgage Marketing & Sales Practices Litigation*, MDL No. 1988 (J.P.M.L. 2008), and he also has experience handling complex federal antitrust claims.  *See, e.g.*, *Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, No. 04-cv-1136-DMS-BLM, 2006 WL 6667002 (S.D. Cal. Jan. 5, 2006), *aff'd sub nom. Wuxi Multimedia Ltd. v. Koninklijke Philips Elecs., N.A.*, 280 F. App'x 968 (Fed. Cir. 2008).  The Panel has recognized the desirability of transferring cases to a "judge who has experience presiding over multidistrict litigation."  *See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009); *see also In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (assigning MDL to "an available transferee judge with prior, successful experience in the management of Section 1407 litigation").

---

[16] *See* Administrative Office of the U.S. Courts, *supra* note 12 (noting 673 pending cases per judgeship in S.D.N.Y. compared with a national average of 594).

The Panel also has emphasized the judge's docket conditions as an important factor in the MDL forum decision. *See In re Am. Gen. Life & Accident Ins. Co. Retiree Benefits "ERISA" Litig.*, 387 F. Supp. 2d 1361, 1363 (J.P.M.L. 2005) (assigning MDL to "a judge with a caseload burden favorable to accepting this assignment"); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (assigning MDL to "a judge who is highly experienced in complex litigation and whose caseload burden is favorable to accepting this assignment"). Judge Sabraw does not currently have an MDL assigned,[17] and his track record demonstrates that he manages his docket with tremendous efficiency.[18] *See In re Digitek Prods. Liab. Litig.*, 571 F. Supp. 2d at 1377 (assigning MDL to "an experienced MDL transferee judge with a docket that will allow him to devote the needed attention to these cases"); *In re Indianapolis Life Ins. Co. I.R.S.§ 412(I) Plans Life Ins. Mktg. Litig.*, 581 F. Supp. 2d 1364, 1366 (J.P.M.L. 2008) (assigning MDL to a judge with "a relatively low caseload").

## C. The Southern District of California is an Accessible, Metropolitan Venue

In choosing the transferee forum, the Panel has expressed a preference for districts in easily accessible metropolitan locations. *See In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005) (assigning MDL to "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require"); *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004) (assigning MDL to a district in "an accessible, metropolitan location"). San Diego is precisely

---

[17] *See* Judicial Panel on Multidistrict Litigation, *supra* note 13.

[18] *See* Administrative Office of the U.S. Courts, *Civil Justice Reform Act of 1990 Report*, at 50 (Mar. 31, 2013) (showing Judge Sabraw had zero motions pending more than six months and zero civil cases pending more than three years).

this type of location—it is one of the ten largest cities in the United States, and its judges regularly handle major business and commercial disputes.[19]

As the Panel has previously noted, "the Southern District of California is an appropriate forum" for an MDL proceeding because it "provides an accessible metropolitan location that is equipped with the resources that this docket is likely to require." *See In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006).

San Diego has a major airport that is only a few minutes by car from the United States Courthouse Annex where Judge Sabraw presides, and is reachable by non-stop flight from numerous cities around the country, making it a convenient location for attorneys who must travel to court hearings from out-of-town offices. As a large city with a strong legal market, San Diego can provide any necessary litigation support services. In addition, there are several hotel options within a short distance of the Southern District of California courthouse.

### D.  In the Alternative, the Southern District of New York Is a Suitable Forum

In the alternative, the Southern District of New York is a suitable forum for the proposed MDL. As Ney Silverman argued in its moving papers, the Southern District of New York is the location of the first-filed Related Action, it has the largest number of Related Actions pending, and it is a judicial district experienced in handling complex cases. *See* Mem. of Law in Supp. of Mot. of Pl. Ney Silverman Ins. Assocs., LLC for the Transfer of Related Actions at 8-13, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542 (J.P.M.L. Mar. 20, 2014) (ECF No. 1-1) (citing Panel transfer decisions on each of these factors).

---

[19] *See* U.S. Census Bureau, *The 15 Most Populous Cities*, (May 23, 2013) https://www.census.gov/newsroom/releases/xls/tables_r20130506_tab3.xlsx (ranking San Diego as the eighth most populous city).

Judge Broderick, to whom a number of the Related Actions are assigned, would be well-positioned to oversee this litigation.  As a former commercial litigation partner at a major law firm and an Assistant U.S. Attorney for the Southern District of New York,[20] Judge Broderick has the experience necessary to "steer this litigation on a prudent course."  *See In re Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009).  Moreover, Judge Broderick does not currently have an MDL proceeding assigned to him.

## <u>CONCLUSION</u>

For the foregoing reasons, the Related Actions should be transferred to the Southern District of California before Judge Sabraw or, in the alternative, to the Southern District of New York before Judge Broderick, for coordinated or consolidated pre-trial proceedings.


Dated: April 10, 2014                    By: */s/ Leah Brannon*
_____
                                         Leah Brannon
                                         CLEARY GOTTLIEB STEEN & HAMILTON
                                         LLP
                                         2000 Pennsylvania Avenue, NW
                                         Washington, DC 20006
                                         Telephone: 202-974-1508
                                         Facsimile: 202-974-1999
                                         *lbrannon@cgsh.com*


                                         *Counsel for Defendant Keurig Green Mountain, Inc.*

---

[20] *See* Federal Judicial Center, *Biographical Directory of Federal Judges, Vernon Speede Broderick*, http://www.fjc.gov/servlet/nGetInfo?jid=3488&cid=999&ctype=na&instate=na (last accessed Apr. 9, 2014).